After an argument by the same counsel, who tried the cause, the opinion of the Court was delivered by
Duncan J.
This is an action on the case, for maliciously, and with a déterniination to harass, vex, impoverish, and distress the plaintiff, directing the sheriff to levy nearly double the sum due on a judgment, obtained by the defendant against the plaintiff, and causing the sheriff so to levy and to ■ sell the goods of the plaintiff, to an amount exceeding the sum due, on which the execution issued.
The attempt by the defendant was to cover, under the penalty of the obligation on which the judgment was confessed, certain promissory notes, due by the plaintiff to the defendant. It is conceded, that this was contrary to all law, and to all experience, for it is certain, that even before the statute of 4th Anne, the penalty was considered in the Courts of law, as only a security for the principal sum due, the interest and the costs. Amery v. Smalridge, 2 W. Bl. 760.
The novelty of the action can form no objection, for this special action on the case was introduced, for the reason that the law never will suffer an injury and a damage without a remedy. Malice forms a necessary ingredient. In order to support the action, the injury and damage to the plaintiff must be proved, and it must be proved, that the injury and damage were occasioned by some malicious act of the defendant. Damages for injuries like this, have been recovered in this form of action at a pretty early period; for Hobart C. J. in Water v. Freeman, Hob. 264, says “ I hold that I may have an action on the.case against him that sues me against his release, or after I have paid the money.” So for maliciously holding to bail, without any probable cause, where nothing is due, or in a sum greatly exceeding the debt due. The injury consists in the oppression and the-malice. This malice may be evidenced from the want of probable cause. It would afford no protection against acts of oppression, did the law require express declarations of' malice.
Where the act is an immediate wrong against .all form of law, trespass vi et armis, is the proper action ; but where the *24 process is legal, but it is used in an oppressive manner, trespass on the case. In the one case, it is the immediate act that gives the party his action for the injury, without relation to the motive; in the other the motive of the act. Malice may, even in the highest offence, murder, be inferred from the circumstances, the emdentia rei. The circumstances may afford no evidence of malice, or the malice may be inferred from all the circumstances, each of which, however minute, is to be taken into consideration "in coming to a conclusion. It is not individual malevolence, as by some it is mistaken for. Malice, as applied to this species of action, is an improper act, injurious to another, proceeding from an improper motive ; whether it be done propter odium vel causa lucri; whether the motive be solely to break up the fortunes of a man, or whether it proceeds from oppressive acts under cover of the law and of legal process, by its means, and not permitted by the law, by which the perpetrator is a gainer, and the party acted upon receives a prejudice, as here to coerce the payment of another debt, by levying more on the execution than could be legally levied. Even the execution of legal process in an oppressive manner, tending unnecessarily to distress and injure a party, by an officer, gives the party injured, a remedy in this form of action. 5 Johns. 12$.
If this act had proceeded from ignorance or mistake of the law, on a fair representation of facts to the attorney, I would not impute the honest mistake of a professor of the law, to malice in the client, for here would be innocence, which would strip the case of its malignant qualities, and would, as I rather incline to consider the law, be a defence in the action. Certainly it would not be a case for heavy or vindictive damages. Had the attorney testified, that he had advised his client, and that without any special agreement to the effect, that he could cover under the penalty, not only the debt in the condition of the bond, but any other debt; that being a case without any species of malice, or improper motive, I would long hesitate, before I would say damages to any extent should be given. But this the defendant has shewn was not his case ; for the attorney states, and no doubt truly states, (for I entertain too high an opinion of all the members of this bar, to suppose that there could be found in the body, one so ignorant of the law, as to direct an execution to be levied as was done in this case, unless on some *25 special statement of facts, which would distinguish this particular case ; as an agreement of the parties that it should be done,) that he was consulted by the defendant, and that he .gave his opinion on what he heard from him in a great measure ; on his statement of facts and his own view of the subject, and from what he believed to be the law arising on these facts. It was not an abstract opinion on the legal right, simply to. cover other debts under the penalty, but on a statement of special facts, and as there was nothing but suggestion. in the opinion of the counsel for the defendant on the trial,unsupported by even an attempt to establish any agreement between the parties, that the act complained of, should be done, and as the opinion of .the attorney was founded on misrepresentations made by the defendant, the client Wilt, must suffer for all the acts to which such misrepresentations lead; for otherwise the party injured would be without.remedy ; for the plaintiff éould have no remedy against the attorney who gave the directions, as he might .have had for the gross .ignorance in giving, such unwarrantable'directions ; for the act was too gross to be imputed to ignorance, and would form presumptive,df not, conclusive, evidence of improper motives ; for as I hold the client not to act maliciously where he takes legal advice, and confiding in that advice, pursues his claim honestly and innocently, so I equally hold the attorney irresponsible for a malicious act, when such act is founded on the misrepresentation of his client; and if the act was founded, as the defendant himself has proved, on some representation, not supported or attempted to be supported by any testimony, any .subsequent act, done by himself or by his attorney, springing from this misrepresentation, is infected by it, and he is liable for all the consequences. But here the act is brought home to the defendant; for the plaintiff stated in the presence of the defendant and the officer, that the execution had issued for double the sum, which the'defendant did not deny ; and the officer turning to the defendant said, “ is' this só ?” and said, “ here is an execution put into my hands; I must levy for the whole amount endorsed on' the writ.”. To which Wilt replied* “ you must do your duty; the money I must have. I must make myself safe.”
William Qeisse swears, that he called on the attorney, who said, he would withdraw Jthe action if the whole amount of *26 the execution was paid. The answer was, “ I will pay you the condition of the bond ; as to the notes, you have no right to seize for them.” The reply was, “ you need not tell me what right I have, I will not give away a certainty for an uncertainty.” It was afterwards proposed to the attorney, that as the plaintiff’s wife was near her confinement, and could not be removed, two men should' be appointed to value the furniture, and the amount should be paid. This likewise was refused, with a declaration that they must be sold by the sheriff. It is true, the attorney said, “ if the bond be now paid, the execution shall be withdrawn ;” but it is unaccountable, that after the mistake had been discovered, it should not instantly have been rectified ; instead of which, the sheriff is permitted to go on and sell to an amount exceeding the condition of the bond. Geisse declared his ability and readiness to pay the amount of the bond, and gave further evidence, to shew that this would have been raised by the friends of the plaintiff; for that Mr. Sperry had offered to relieve him by the advance of 6,000 or 7,000 dollars. This is not an unimportant circumstance ; it stands uncontradicted, and was competent evidence ; it went to establish two facts ; the credit of Sommer, and the readiness of his friends to discharge the real debt.
All the facts and circumstances, the whole conduct of Wilt, and his attorney, who appears to have acted on the misrepresentation of Wilt; the property, the friends, the credit of Sommer, his debts ; all were fairly submitted to the jury, to draw their own conclusions, and certainly, with very cautious observations as to the quantum of damages, as favourably for the defendant, as the state of the testimony would admit of. The jury may not improperly have drawn conclusions very unfavourable to the defendant; that this oppressive act brought down upon the plaintiff immediate ruin; that with the credit he possessed, with friends able and willing to assist him, he might have weathered the storm, overcome his difficulties, kept his head above water, until the reasonable expectation from the just speculations he had entered into, would have been realised by a peace. For though embarrassed, his credit was unimpaired ; though in debt, his creditors were not driving him to ruin by executions; and that the seizure made by Wilt, beyond the legal right under his judgment, brought down upon him all his creditors ; de *27 stroyed his credit with his friends, and forced him to the last sad resort, a prison, and the insolvent laws. If such might be the fair .conclusions from the evidence, and I am by no means satisfied that they are not, it is to be considered whether the damages assessed by the only judges of damages, are so extravagant, disproportionate, outrageous and monstrous, as to call upon the Court to pronounce them to be the effect of intemperance, of passion, and not ■ the deliberation of judgment. There is no standard, in actions of this nature, by which the Court can estimate damages; it is not a matter of calculation of pounds, shillings, and pence ; some feelings must and will enter into the enquiry; the most obdurate heart cannot shut them out. It is not even a matter of mere compensation to the party ; but an example to deter others; and as there were circumstances from which the jury might have inferred malice, and evidence which satisfied them, that the ruin of the plaintiff was occasioned by an act of oppression, and many aggravating circumstances of useless severity, my opinion is, that although the damages are high, higher than I could have wished them, yet this will not justify the Court in setting aside the verdict. And though I do not entertain any doubt as to the power of the Court to interpose a discretion, in cases of disproportionate and enormous damages, yet the case must be a rank one, and I • am not satisfied but that the public justice will be more advanced by suffering the verdict to stand, than by disturbing it.
One argument urged by the counsel for the plaintiff in error, remains to be answered. They conjecture that the jury took into consideration the verdict obtained by Wilt on the promissory notes, and, influenced by this, gave a verdict for a sum exceeding that verdict, under the impression that this was the only way in which they could compensate the plaintiff for the injury sustained. This is mere conjecture; but I am not prepared to say that this was an improper view of the subject. If they were of opinion that this act of Wilt produced the insolvency of Sommer, and rendered him unable to pay the debt of Wilt; if they did not find a sum .beyond that, it would be no retribution to the plaintiff, nor punishment of the defendant.
A case, somewhat resembling this, is to be found in 2 Wm. BL 942. Sharpe v. Brice. Trespass against a custom house officer for an unsuccessful search after prohibited and uncus *28 tomed goods. Verdict for the'plaintiff, with 500/. damages, Perrot, Baron, who tried the cause, reported the damages to be very excessive, and advised the application for anew triaL De Grey, C. J. who delivered the opinion of the Court, says, “ These damages are outrageous and excessive, but the case-is peculiarly circumstanced ; it is admitted that the present defendant has recovered in a former action for a smuggling penalty of 300/. against the now plaintiff.' This he offers to set off against this 5001.; but the present defendant refuses it. This shews a want of candour on his side, and therefore he is entitled to no assistance.” . Now here it is agreed that against the amount of damages recovered in this action there shall be set off the judgment of Wilt v. Sommer. I cannot say that if the jury did take this view of the subject, it was a very erroneous one. It was again urged that this execution remains in full force, and not set aside by the District Court. Not so ; for it is virtually set aside by the plaintiff’s attorney, in the suit, agreeing' to take out of Court the real debt due on the bond. But it receives a decisive answer. How if the plaintiff had a subsisting execution for the notes, could he proceed to recover them in an original action, as he has done ?
It is objected that this action could not be supported by the plaintiff; that as it was an injury to his estate it passed to the assignees by the assignment. This personal tort is not the subject of assignment under the insolvent debtors’ act; it is neither estate, credit, nor effects. The insolvent debtor would not be discharged from personal responsibility for such acts committed by him. The case in 2 Dali, is conclusive. • It is a personal action which would die with his person. If it passed by the assignment, and vested in the as - signees, his death could not affect it.
The magnitude of the damages seemed to call for a more minute detail of the evidence and a more expansive course of reasoning than is usual in motions for new trials.
I am of opinion that the rule to shew cause be discharged, and that judgment be entered for the plaintiff, with liberty to the defendant to set off the amount of the judgment he has recovered against the. plaintiff.
Judgment for the plaintiff.