THE PEOPLE, *ex relatione* Stanton, *vs.* TIOGA C. P.

A chose in action for a tort merely personal, is not assignable so that a court of law will protect the assignee against the subsequent fraudulent discharge of the damages recovered in a suit prosecuted for such tort, although the tort-feazor accept the discharge with full knowledge of the assignment; the remedy of the assignee is by action against the assignor for breach of his express or implied undertaking not to do any thing in the matter to prejudice the assignee.

Where a female out at service was debauched, and the person with whom she resided, by power of attorney, authorized her step-father to prosecute a suit in his name for the seduction, saving the master harmless from all damages, costs and charges, but not declaring that the fruits of the suit should belong to the step-father, it was held, that the instrument, was sufficient to transfer the damages which might be recovered in the suit.

Where such suit was prosecuted and a recovery had, and the nominal plaintiff acknowledged satisfaction of record, and the court in which the suit was prosecuted refused to vacate the entry of satisfaction, this court denied a mandamus directing a vacatur: holding that the proper remedy was by action against the nominal plaintiff.

A WRIT of alternative mandamus having issued, commanding the Tioga C. P. to vacate a rule between Jesse Thomas, plaintiff, and James Lounsberry, defendant, denying a motion made to vacate the entry of satisfaction acknowledged by Thomas and to grant the motion: the common pleas returned, that at the July term, 1836, of that court, Thomas recovered a verdict of $550 damages against Lounsberry in an action on the case for debauching the plaintiff's servant, and that judgment was duly satisfied of record on a satisfaction piece acknowledged by him; that on a motion made to vacate the satisfaction, it appeared that on the 18th of February, 1836, the plaintiff executed a sealed power of attorney to the relator, reciting that the defendant had debauched the relator's step-daughter while she resided with the plaintiff, and that she had returned home to the house of the relator, where she was likely to occasion him additional expense and trouble, and authorizing the relator to prosecute Lounsberry in the plaintiff's name—he, the relator, to keep the plaintiff harmless from all damages, costs and charges. Of the contents of this paper, the defendant

Oct. 1837.

had full notice before the verdict, which was the fruit of the prosecution mentioned in the power of attorney. Notwithstanding this, the common pleas denied the motion to vacate the satisfaction. A motion was now made for a peremptory mandamus.

*M. T. Reynolds*, for the relator.

*S. Stevens*, contra.

*By the Court*, COWEN, J. The questions are, 1. Whether, admitting this claim for the wrong done to Thomas to be assignable, the sealed instrument was operative as an assignment; and 2. If so, whether such a claim be assignable.

Looking at the facts recited in the power of attorney and the provisions to save Thomas harmless, no one can doubt that the object and intent of the power of attorney was to assign all Thomas' interest to Stanton, the relator, to whom in conscience it belonged. He was the real sufferer, and the plaintiff did a just and generous act in giving such a power. No two persons can understand it in different ways. It says, " because the defendant has probably brought disgrace upon the relator, with probable expense, I empower him to prosecute in my name, at his own expense. · Witness my hand and seal." This is but another mode of saying, under seal, " You may receive to your own use the avails of the suit as an indemnity for your moral injury, &c. The words, " I do hereby authorize him to prosecute in my name," when viewed in connection with the reason and motives, and at whose expense, are equivalent to a covenant that the assignee might *prosecute availably to himself.* It is like an irrevocable power of attorney, which, in the case of an ordinary chose in action operates as an assignment, and a power of attorney for a consideration is irrevocable. Per Lord Eldon, in *Bromley* v. *Holland*, 7 Ves. 28. Per Kent, J. in *Bergen* v. *Bennett*, 1 Caines' Cas. in Err. 15, 16, 17. The costs, time and other charges of such a prosecution were, it seems, actually incurred by Stanton. They are many times very great in this kind of action; at any rate, they make a *valuable* in addition to the *moral* consideration:

no matter what the amount. Suppose the paper had said,
" in consideration of one dollar to be paid," which had been
afterwards advanced. The slightest consideration is suffi-
cient, either of benefit to the assignor or damage to the
assignee. Surely, something more than the mere burden of
a suit for Thomas' benefit was intended. The contrary
would be a very absurd construction. Suppose Stanton had
got the money, could Thomas have recovered it of him? I
should think not a cent of it.

I regret to think, however, that the relator has mistaken
his remedy, in moving to vacate the satisfaction entered
upon the record   *Gardner* v. *Adams*, 12 Wendell, 297, 299,
is cited and relied upon by the counsel for the defendants ;
but the question is not whether this demand be transferable
so as to pass the *legal* right. Matters in action are never so
transferable, unless they arise on certain commercial instru-
ments. As a general rule, however, a chose in action is said
to be assignable in equity ; and when assigned with notice to
the person from whom it is due, courts of law protect the
assignee against all prejudice from the acts of the assignor.

*Chose in action*, taken in its broadest latitude comprehends
not only a demand arising on contract, but also on wrong
or injury to the property or person. 2 Woodd. Lect.
387. Toml. Law Dict., Chose. Lilly's Abr. Chose in Ac-
tion. But for the purposes of any sort of assignment, legal
or equitable, I can no where find that the term has ever been
carried beyond a claim due either on contract, or such
whereby some special damage has arisen to the estate of
the assignor. Executors at law take every thing belonging
to their testator which can be considered as property, or
form the subject of dealing in any way. By the equitable
construction of a statute, they shall take rights of suit for
such injuries to the testator's personal property as render it
less valuable to the executor. 1 Williams' Ex. 507 to 513.
Their right to all demands arising on contract, especially, is
very comprehensive ; and yet, even they cannot sue for the
breach of a marriage promise made to their testator, where
no special damage is alleged, because the claim is in nature

of a personal wrong. *Chamberlain* v. *Williamson*, 2 Maule & Sel. 408, 415. Lord Ellenborough there said, if such an action were maintainable by the executors, every action founded on an implied promise to the testator, where the damage subsists in his personal suffering, would also be maintainable ; and among them, for all injuries affecting the life and health of the deceased, all such as arise out of the unskilfulness of medical practitioners, and the imprisonment of the party brought on by the negligence of his attorney, &c.

The object and policy of the law is, that executors and administrators should take as far as possible every thing wearing the semblance of personal property in the testator or intestate, as a part of the assets or fund to pay debts. The same object is aimed at by bankrupt and insolvent acts, which declare what shall pass to commissioners, trustees and assignees. Such statutes are very broad in their terms. *Estate* or *effects* is used in the English statute, 1 Cooke's Bank Law, 261 ; *Property, real, personal and mixed,* in that of Pennsylvania, Ingr. on Insolvency, 50 ; and *All the estate, real and personal, of every nature and description,* in the bankrupt law of the United States, 1 Peters, 218. Yet I have not been able to find any case in England which, in respect to personal estate, has given the assignees a greater right than would go to an executor : none which vests in them a right of action for a personal tort, or indeed any other mere tort, while there are several cases in Pennsylvania which they deny that such a right will pass. In *Somner* v. *Wilt*, 4 Serg. & Rawle, 19, 28, the claim was for an abuse of legal process against the plaintiff's goods. Duncan, J. said the claim was neither *estate, credit* nor *effects*. The action is personal, and would die with the person. In *North* v. *Turner*, 9 Serg. & Rawle, 244, a trespass *de bonis asportatis* was put by the court as an exception, because it affected the bankrupt's property, and was therefore separable from the person. But not so says Gibson, J. as to slander, assault and battery, criminal conversation, &c. ; and this was afterwards held of a claim for a malicious and excessive distress. *O'Donnell* v. *Seybert*, 13 Serg. & Rawle, 54.

In the two last cases, the court appear to measure the assignable rights which pass to executors, and those which go to assignees of insolvents by the same rule. In the last case, Duncan J. instances that of an action on a penal statute which does not survive. So of an action on the case for a deceit. *Shoemaker* v. *Kelley*, 2 Dall. 213.

It has been denied under the bankrupt law of the United States that even a right to trespass *de bonis asportatis* will pass. *Hempstead* v. *Bird*, 2 Day, 293; 3 id. 272, S. C. Speaking on the same subject in *Comegys* v. *Vasse*, 1 Pet. 213, Story, J. says: "In general, it may be affirmed that mere personal *torts* which die with the party, and do not survive to his personal representatives, are not capable of passing by assignment." *Gardner* v. *Adams*, before mentioned, merely declares that a *tort* is not assignable so as to warrant an action in the name of the assignee. But the cases in respect to executors and insolvent assignees, and the like, certainly go very far to direct what we are to consider matter of property or estate, so far that it can be touched by a contract and made a subject of transfer between parties in any way, at law or in equity. If the right be not so entirely personal, that a man cannot by any contract place it beyond his control, it is assignable under the statutes of insolvency, or will on his death pass to his executor. The reason is because it makes a part of his estate, it is matter of property, and as such it is in its nature assignable. On the contrary, if it be strictly personal, it is beyond the reach of contract; in the same sense we say of many *rights*, they are inalienable. No one would pretend that a man's person could be specifically affected by contract: though he should bind himself by indenture, equity could not enforce the agreement. *Mary Clark's case*, 1 Blackf. 122. So of a man's absolute personal rights in general, as, his claim to safety from violence, and his relative rights as a husband, a father, a master, a trustee, &c. These, though professedly aliened in the strongest terms, cannot be specifically bound. Neither law nor equity will recognize the transfer. A claim of damages for a violation of any of these or the like rights appears, upon the authori-

ties, to come within the same rule as being correlatively of the same nature. Such, clearly, was the case at bar. The injury done to Thomas was a violation of his rights as a master. Even had his servant been bound by indenture, she could not have been assigned; and had he died, the indenture would have been void, *Baxter* v. *Burfield*, 2 Strange, 1266; though a contract that she should serve another would doubtless have bound him personally. Looking at the cases and at legal analogies, it appears to me the same distinction must prevail here. In *Caistre* v. *Eccles*, 1 Ld. Raym. 683, it was held that though the assignment of an apprentice was void as such, yet it operated as a covenant by the first master that the apprentice should serve the second, on which a suit would lie. This very distinction was taken in respect to a tort in *Deering* v. *Farrington*, 3 Keb. 304. The defendant sold to the plaintiffs £500, part of the loss by firing a ship, which should be recovered against any person, and held that though this could not operate by way of assignment, yet the defendant having got the money himself, he was liable to the plaintiff on an implied covenant. Hales, C. J. said the assignment did not transfer the duty, but was a contract to transfer the benefit; and the law makes a covenant wherever the party will contravene his agreement by deed. This was not exactly a personal injury. The courts at this day might, as it respected property hold such a claim assignable in equity; but the case shows the principle which is still applicable to personal wrongs.

A right to reclaim money paid on an usurious consideration has been held assignable. *Breckenridge* v. *Churchill*, 3 J. J. Marsh. 11, 13; and in *North* v. *Turner*, 9 Serg. & Rawle, 244, it was decided that a claim for a trespass committed by taking and converting personal property, as it would pass to an executor, might be assigned in equity, so as to be bound specifically; though it was conceded that injuries strictly personal could not. This case, it appears to me, goes the utmost length which can be allowed in the doctrine of equitable assignability. Assignments of personal injuries must still be regarded as mere covenants or promises, which we cannot directly protect against the interfer-

ence of the immediate party, though the defendant have full notice of the effort to assign. If the person professing to assign will do prejudice to the right, by extinguishing or impairing it, the party with whom he deals must be left to his action for damages, according to the nature of the undertaking. If it be under seal, then he must bring covenant, as was held in *Deering* v. *Farrington;* if without seal, then assumpsit.

Motion denied, but without costs.