# BUTLER *vs.* THE NEW YORK AND ERIE RAIL ROAD COMPANY.

Since the code, an assignee takes precisely the same interest, on the assignment of every species of demand, either at law or in equity, as he did before.

Hence if the demand is such as was capable of assignment before the code was adopted, so as to carry an equitable interest to the assignee, it is such a demand as will now pass by assignment, so as to give the assignee a right of action thereon.

Claims for mere personal torts, which die with the person—such as slander, assault and battery, false imprisonment, crim. con., seduction and the like—are not assignable; but claims for taking and converting personal property, or for injury to personal property, and it seems, generally, all such rights of action for a tort as would survive to the personal representatives of the party, may be assigned, so as to pass an interest to the assignee, which he can assert in his own name in a civil action under the code, as he formerly might do in the name of the assignor, at law.

Service of notice of the intended examination of an assignor, as a witness, in a justice's court, cannot be made upon the attorney of the opposite party, before such party has appeared, and before issue has been joined, in the action.

Whether service of a notice of that character, upon the attorney of a party, is good in any case? *Quære.*

THIS action was commenced in a justice's court, and the plaintiff's complaint was as follows: " The plaintiff complains of the defendants for that on or about the 21st March, 1853, at Union, in said county, defendants by their cars and engines carelessly and negligently ran over and killed one yoke of oxen

the property of one David C. Warner, of the value of $100, which claim has been assigned and belongs to the plaintiff, and for which he claims judgment to $100." The defendants denied the complaint. James H. Christopher testified upon the trial that he purchased this claim of Warner and sold the same to the plaintiff. David C. Warner testified that he owned the oxen at the time of the collision, and sold them to Christopher after they were killed. The plaintiff gave evidence showing that the oxen were killed by one of the defendants' engines running over them, and tending to show that they were killed by the negligence of the defendants' servants; and the justice rendered judgment for the plaintiff for $100 damages and $5 costs.

Upon the trial of the cause, when the plaintiff called J. H. Christopher as a witness, the defendants objected to his being sworn, on the ground that no notice of his being examined for the plaintiff had been produced. The plaintiff then produced a notice of the intention to examine said witness, with an affidavit made by Smith Park, showing that he served the same on Jacob Morris on the 20th day of September, 1854, which was the very day the summons in the cause was issued, the same being returnable on the 26th. It was also admitted upon the trial that this notice was served on Morris on the 20th of September, 1854. The defendants' counsel then further objected to said Christopher being sworn, on the ground that notice that an assignor would be sworn could not be served until after issue joined, and that such notice can only be served on the defendant; which objection was overruled, and the said Christopher was sworn and examined as a witness. The defendant appealed to the Broome county court, where the judgment was affirmed. The defendants then appealed to this court. There was no demand made of the defendants by the plaintiff for these oxen, or otherwise.

*La Grange & Talbert*, for the plaintiff.

*Jacob Morris*, for the defendants.

*By the Court,* MASON, J.    The first question which I propose to consider in this case is, whether the plaintiff, as assignee of this cause of action, was entitled to recover those damages in this action.    At common law a right of action for injuries to the person or character were not assignable. (19 *Wend.* 173.    7 *How. Pr. R.* 492.)    These are mere personal torts and die with the party, and are not assignable.    Such are actions of slander, libel, assault and battery, false imprisonment, crim. con., seduction, &c.    On the other hand, where the injury affects the estate rather than the person, where the action is brought for damage to the estate and not for injury to the person, personal feelings, or character, the right of action could be bought and sold at common law.    Such a right of action, upon the death, bankruptcy or insolvency of the party injured, passes to the executor or assignee as a part of his assets, because it affects his estate and not his personal rights.    (19 *Wend.* 73. 1 *Chitty's Pl.* 68.    2 *Maule & Sel.* 408.    9 *Serg. & Rawle,* 244.    6 *How. Pr. R.* 161.    1 *Peters' Rep.* 213.    7 *How. Pr. R.* 492.    1 *Seld.* 347.)    Mere matters in action, however, were not so far transferable at common law as to pass the legal title, unless we except certain commercial instruments.    The equitable title only passed, but when assigned with notice to the person from whom the liability is due, courts of law would protect the assignee against all prejudice from the acts of the assignor.    (19 *Wend.* 75.)    The action, however, had to be enforced in the name of the original party.    The 111th section of the code adopts the equity and not the legal rule in regard to parties.    It requires that every action must be prosecuted in the name of the real party in interest; but by an amendment of this section, in 1851, it is declared " *that this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract.*"    Before this section was amended in 1851, by adding the above restriction, it was held that in the class of cases where the right of action for a tort affected the property of the party, the right of action was assignable, so as to enable the assignee, under section 111 of the code, to sue in his own name.    (6 *How. Pr. R.* 661.    7 *id.* 492.

2 *Comst.* 293.   2 *Seld.* 347.)   This amendment to section 111 has been supposed by some as intended to restrict this right, and to establish the general principle that nothing but a cause of action growing out of contract could be assigned, so as to give the assignee such an interest as would enable him to enforce his demand by civil action.

I do not see how any such construction can be given to this amendment.   It is true, it does not authorize the assignment of a thing in action not arising out of contract.   Nor does it forbid such assignment.   The right rests upon precisely the same footing it did before, and an assignee takes precisely the same interest in the assignment of every species of demand, either at law or in equity, as he did before the code.   It follows, therefore, that if the demand was such as was capable of assignment before the code, so as to carry an equitable interest to the assignee, it is such a demand as will now pass by assignment, so as to give the assignee a right of action therein.   If I am right in the views above expressed, it follows that mere personal torts, which die with the person, such as slander, assault and battery, false imprisonment, crim. con., seduction and the like, are not assignable; but torts for taking and converting personal property, or for injury to personal property; and it seems generally all such rights of action for a tort as would survive to the personal representatives of the party, may be assigned so as to pass an interest to the assignee, which he can assert in his own name in a civil action under the code as he formerly might do in the name of the assignor at law.   (*Contra*, 18 *Barb.* 500.)

It seems to me, however, that the service of the notice of the intended examination of Christopher, upon Morris, was not good service.   At that time he had not appeared in the suit, and as his authority to appear was not shown until the 26th, and as no copy of it is returned, it seems to me that the service on him on the 20th was bad; and I very much doubt whether a service of such a notice on the attorney, who only appears in a justice's court as agent for the limited purpose of pleading in the suit and trying the cause, is ever good.   The judgment of the county court, and that of the justice, should be reversed

The People *v.* The Attorney General.

for this cause alone.   The objection was distinctly taken to the right of the plaintiff to examine the assignor as a witness, on the ground that no such notice of his intended examination had been given to the defendants, and the objection was overruled; and for this error the judgment must be reversed.

[Delaware General Term, July 8, 1856.   *Shankland, Gray, Mason* and *Balcom,* Justices.]