SNYDER v. THE WABASH, ST. LOUIS AND PACIFIC RAIL-
WAY COMPANY, *Appellant.*

**Tort to Property :** ASSIGNABILITY OF ACTION FOR : CODE. A right
of action arising from a tort to property is assignable under the
code (overruling *Wallen v. Ry.*, 74 Mo. 521).

*Appeal from Daviess Circuit Court.*—HON. JOHN C.
HOWELL, Judge.

AFFIRMED.

*W. H. Blodgett* and *G. S. Grover* for appellant.

(1.) It is not averred in the statement in what town-
ship the animal was killed. Nor does it appear in what
township F. Ewing was justice of the peace. These de-
fects are jurisdictional and it was error to permit any evi-
dence to be introduced in the case. *State v. Metzger*, 26
Mo. 65; *Hansberger v. Ry.*, 43 Mo. 200; *Iba v., Ry.* 45
Mo.475; *Haggard v. Ry.*, 63 Mo. 383. (2) The statement
is fatally defective in not averring that the animal in ques-
tion got upon defendant's track at a point which was
not fenced, as required by law, and was there killed in
consequence of such failure to fence. It is averred that
the animal got upon defendant's track by reason of the
failure to fence, but where is not stated. This is an
essential fact and must be pleaded in order to state a cause
of action under section 809 of the statute. And this
statement is not good under any other section of the
statute, or at common law. *Johnson v. St. L., K. C. &*
*N. Ry.*, 76 Mo. 554, and cases cited; *Cooper v. St. L., I.*
*M. & S. Ry.*, — Mo. ——; *Mayer v. Union Trust Co.*,
— Mo. ——; *Nance v. Ry.*, 79 Mo. 196. (3) The plaintiff
here is not the real party in interest, and, therefore, was
not entitled to recover. The cause of action was vested

| 86 | 613 |
| 32a | 176 |
| 32a | 193 |
| 86 | 613 |
| 100 | 410 |
| 86 | 613 |
| 44a | 342 |
| 86 | 613 |
| 109 | 89 |
| 49a | 284 |
| 86 | 613 |
| 117 | 291 |
| 54a | 73 |
| 86 | 613 |
| 61a | 150 |
| 86 | 613 |
| 74a | 207 |

in Pleasant Blakely and was not assignable. This prin-
ciple is well settled in Missouri. Sec. 3462, R. S. Mo.
1879, p. 592; *Cable et al. v. St. L. M. Ry. & Dock. Co.*
21 Mo. 136; *Burnett v. Crandall*, 63 Mo. 416; *Wallen
v. St. L., I. M. & S. Ry. Co.*, 74 Mo. 521. The case of
*Smith v. Kennett*, 18 Mo. 154, on which respondent's
counsel rely, is no longer authority, because the ruling
there was under the practice act of 1849. Laws of 1849,
sec. 1, art. 3, p. 75. That act contained in substance the
first clause of section 3462 of the present statute, but did
not contain the following proviso: "But this section
shall not be deemed to authorize the assignment of a
thing in action not arising out of contract." This pro-
viso appeared for the first time in the revision of 1855.
Stat. Mo. 1855, sec. 1, art. 2, p. 1217. And the cases we
here cite were decided under section 3462 of the present
statute.

*Edwin Silver* and *W. D. Hamilton* for respon-
dent.

The code procedure was first adopted in New York
in 1848. Pomeroy on Remedial Rights (2 Ed.) sec.
28. It has since been adopted in twenty-two other states
and territories. In New York, Indiana, Kansas, Mis-
souri, Wisconsin, Florida, South Carolina, Kentucky,
Oregon, Nevada, Dakota, North Carolina, Washington
and Montana the code provides: "Every action must
be prosecuted in the name of the real party in interest.
But this section shall not be deemed to authorize the
assignment of a thing in action not arising out of con-
tract." Pomeroy, section 124. This last clause was not
in the code as originally adopted in New York in 1848,
but was added in 1851. Voorhees N. Y. Code of 1852
(3 Ed.) 81 and 82. Since the amendment of 1851,
adding the words "but this section shall not be deemed
to authorize the assignment of a thing in action not
arising on contract," it has been uniformly held by the

court of appeals of New York that injuries to property are assignable as before the amendment. *McKee v. Judd*, 2 Kernan, 622; *Zabriske v. Smith*, 3 Kernan, 322, 1855; *Butler v. Ry.*, 22 Barb. 110, 1856; *Fried v. Ry.*, 25 How. P. 285, 1858; *Byxbie v. Gould*, 24 N. Y. 667, 1862; *Graves v. Spier*, 58 Barb. 386, 1870; see Pomeroy on Remedies, secs. 144, 145, 146, 147, and note, 148, 149, 150 and 151; Bliss on Code Pleadings, secs. 40, 41, 42, 43; Van Santvoord's Code Pleadings, 110, 111. Same doctrine is also held in Wisconsin, Kansas, and California. *McArthur v. Canal Co.*, 34 Wis. 152–3; *Stewart v. Balderston*, 10 Kan. 131; *Lazard v. Wheeler*, 22 Cal. 141. See Code of Kansas of 1868, 685, and of 1879, 604, which are like ours. The case of *Wallen v. Ry.*, 74 Mo. 521, should be overruled for the following reasons: (*a*) It was decided without any brief having been filed for respondent. (*b*) The provision of our practice act here involved was adopted into our Revised Statutes of 1855, from the code practice act of New York of 1849, as amended in 1851. See *supra*. It is a well settled principle, that when a statutory provision of another state is adopted, it is so adopted with the judicial construction of the same up to that time. *Skouten v. Wood*, 57 Mo. 380. Our practice act of 1855 was approved December 12, 1855, and went into effect May 1, 1856. See Revised Statutes, 1855, p. 1302 and p. 1036, sec. 18, and the cases of *McKee v. Judd*, 3 Kernan, 622, and *Zabriske v. Smith*, 3 Kernan, 322, were decided before the taking effect of the practice act here in 1856, and, therefore, are controlling decisions in respondent's favor, on the point here presented. (*c*) The doctrine of the *Wallen case*, and of the opinion of the court in the case at bar, stand alone, being in conflict not only with the decisions of the court of appeals in New York, but elsewhere, where the point has been passed on, viz: in Wisconsin and Kansas and California; and is also in conflict with the opinion of text writers of such reputation and merit as Judge

Bliss, Prof. Pomeroy and Mr. Van Santvoord. See *supra.* (*d*) Because the doctrine of the *Wallen case* is in conflict with the meaning and intent of section 96, Revised Statutes, 1879, which has been in force in this state since 1835. See Revision of 1835, art. 2, sec. 24, of administration. This same provision, in same form, has been for a long time in existence in New York and other states, and it has been held uniformly under it, that property wrongs surviving to executors are assignable. See Pomeroy on Remedies, sec. 147, note 1. Also New York decisions above cited.

Norton, J.—The first question presented by the record in this case is, whether a cause of action arising out of defendant's failure to erect and maintain lawful fences along the sides of its road, whereby a hog of the value of eight dollars was killed, can be assigned so as to give the assignee a right to sue in his own name. This question was answered in the negative by this court in the case of *Wallen v. The St. Louis, Iron Mountain & Southern Railway,* 74 Mo. 521, when it was held that section 3462, Revised Statutes, forbids the assignment of a thing in an action, not arising out of contract. In this case we are asked to reconsider the question and to recede from the doctrine announced in the case above cited. According to the authorities to which we have been cited, the test to be applied in determining the assignability of causes of action is whether the cause of action would survive and pass to the personal representatives of a decedent. If it would, it is transferable by the direct act of the parties. If it would not, it is not assignable.

Mr. Pomeroy, in his work on Remedies and Remedial Rights (sec. 147), lays the rule down as follows: "It is fully established by a complete unanimity in the decisions, that causes of action which survive and pass to the personal representatives of a decedent as assets,

or continue as liabilities against such representatives, are in general assignable. By the common law, causes of action arising out of contract, unless the contract, being still executory, was purely personal to the decedent, or unless the injury resulting from its breach consisted entirely of personal suffering, bodily or mental, of the decedent, did thus survive ; while causes of action arising out of torts did not, in general, survive. The statutes, in most, if not all the states have changed this ancient rule, and have greatly enlarged the class of things in action which survive. It is now the general American doctrine, that all causes of action arising from torts to property, real or personal —injuries to the estate, by which its value is diminished, do survive and go to the executor or administrator as assets in his hands. As a consequence, such things in action, although based upon a tort, are assignable." See also sections 146, 148, 149, 150.

That the cause of action in this case would have survived to the personal representatives of the owner of the hog alleged to have been killed by defendant cannot be questioned in view of section ninety-six of Revised Statutes, which provides that " for all wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, * * * or after his death, by his executor or administrator in the same manner and with the like effect in all respects as actions founded on contract." It is further provided in section ninety-seven, that the above quoted section shall not extend to actions for slander, libel, assault and battery, or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator.

It is claimed by defendant's counsel that the assignability of a thing in action, arising out of a tort for

injury to real or personal property is denied by section 3462, Revised Statutes, which is as follows: "Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in the next succeeding section; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." The last clause in the above section was added to it as an amendment in 1855, and took effect on the first day of May, 1856. At the time the amendment was adopted the code of New York contained a section in precisely the same words as are to be found in said section 3462 ; and previous to the adoption of the amendment, it was held by the court of appeals of New York, in the cases of *McKee v. Judd*, 2 Kernan, 622, and *Zabriskie v. Smith*, 3 Kernan, 322, that a cause of action which would survive to the personal represen- tatives can be transferred and enforced in the name of an assignee. It follows from the ruling made in the case of *Skouten v. Wood*, 57 Mo. 380, that section 3462 was adopted with the construction given to it by the courts of New York. It is said in that case: "That the construction of the act given by the courts of the state or country in which it originated would be very persuasive, if not conclusive evidence, that our legislature in adopting it meant to adopt it as construed by the judicial authorities of the state where it originated." So in the case of *Butler v. The New York & Erie Ry. Co.*, 22 Barb. 110, where a suit was brought by the assignee of a cause of action against the railroad company for negligently running over and killing a yoke of oxen, the court held that the action was maintainable in the name of the assignee, and in the disposition of the cause it is observed, "that the one hundred and eleventh section of the code requires that every action must be brought in the name of the real party in interest ; but by an amendment of the section in 1851, it is declared 'that this section shall not be deemed to authorize the assignment

of a thing in action not arising out of contract.'
Before this section was amended in 1851, by adding the
above restriction, it was held that in the class of cases
where the right of action for a tort affected the property
of the party, the right of action was assignable, so as to
enable the assignee, under section 111 of the code to
sue in his own name. This amendment to section 111
has been supposed by some as intended to restrict this
right, and to establish the general principle that nothing
but a cause of action growing out of contract could be
assigned so as to give the assignee such an interest as
would enable him to enforce his demands by civil action.
I do not see how any such construction can be given to
this amendment. It is true, it does not authorize the
assignment of a thing in action not arising out of con-
tract. Nor does it forbid such an assignment. The
right rests precisely on the same footing as it did before,
and an assignee takes precisely the same interest in the
assignment of every species of demand as he did before
the code. It follows, therefore, that if the demand was
such as was capable of assignment before the code, so as
to carry an equitable interest to the assignee, it is such a
demand as will now pass by assignment so as to give the
assignee a right of action therein."

The same doctrine is announced in the following
case: *Fried v. Ry.*, 25 How. 285. The same rule has
been announced in Wisconsin and Kansas, in both of
which states a provision, worded in the exact language of
section 3462, Revised Statutes, is to be found in their
codes of practice. See *McArthur v. Canal Co.*, 34 Wis.
152, 153. In the thirty-eighth section of Bliss on Code
Pleading it is said: "The section of the statute requir-
ing the action to be brought in the name of the real
party in interest, closes with this proviso: 'But this
section shall not be deemed to authorize the assignment
of a thing in action not arising out of contract;' which
can only be understood as guarding against the infer-

ence that the section authorizes the assignment of rights of action arising from torts, which were not before assignable. The matter is left as before, and the proviso seems to be without legal effect." Van Santvoord's Pleading, 111, is to the same effect. It was held by this court, in the case of *Smith v. Kennett*, 18 Mo. 154, that a right of action for the conversion of property may be assigned under the code so as to enable the assignee to sue in his own name.

The cases of *Cable et al v. Ry. & Dock Co.*, 21 Mo. 133, and *Burnett v. Crandall*, 63 Mo. 416, to which we have been cited by defendant's counsel, have no bearing on the question in hand, as in both of them the question involved was whether it was permissible for a party to split his cause of action by assigning part of it, and it was simply held that he could not. In view of what has been said, we must answer the interrogatory propounded in the beginning of this opinion in the affirmative, and hold that the proviso added, by way of amendment in 1855 to section 3462, neither forbade the assignment of causes of action arising in tort, for such injuries to property as survived to the personal representative, nor authorized the assignment of such causes of action arising in tort, which did not survive to such representative, but died with the person, and that, in so far as the opinion in the case of *Wallen v. The St. Louis, Iron Mountain & Southern Ry.*, 74 Mo. 521, conflicts with what is here said, it is overruled.

We think the statement made is sufficient and that the case was fairly tried. All concur, except Judge Henry who dissents.

HENRY, C. J., DISSENTING.—In *Smith v. Kennett*, 18 Mo. 154, decided in 1853, it was held that a right of action for the conversion of personal property was assignable, and that the assignee might sue in his own name; but that a chose in action for injuries to the

person was not assignable. The statute then in force provides that: "Every civil action must be prosecuted in the name of the real party in interest except as otherwise provided in the next succeeding section." And that next section excepted an administrator, a trustee of an express trust, and a person expressly authorized by statute to sue. In 1855, within two years after the decision above referred to, the statute was amended as follows, and so it has remained ever since: "Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in the next succeeding section; *but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract.*" What is the meaning of the last clause? It applies, whatever its meaning may be, to all causes of action not arising on contract, as well as those recognized as assignable in *Smith v. Kennett*, as to those based upon injuries to the person, decided in that case to be non-assignable. It is manifest that the first clause of the section never was susceptible of a construction which would authorize the assignment of a right of action for personal injuries, much less the right of an assignee of such a thing in action to sue in his own name. Who that is capable of construing the simplest English sentence, knowing what was decided in *Smith v. Kennett*, would construe, as authorizing the assignment of a right of action not by law assignable, the requirement, "all actions shall be prosecuted in the name of the real party in interest?"

That section, before the amendment, only operated upon cases in which the right of action was then assignable, and if one as assignee had, under the statute of 1849, for a personal injury to another, is it not too clear to admit of argument that he could not have sustained the action? The amendment which is, in effect, a proviso, means that no chose in action, not arising out of contract, shall be assignable, or that a right of action

not arising out of contract should not be prosecuted in the name of an assignee. It means one or the other, or it is a meaningless superfluity. I am not inclined to construe it as forbidding the assignment of things in action, recognized as assignable in *Smith v. Kennett.* Nor was it so held in *Wallen v. Ry.,* 74 Mo. 521. We must, if possible, give effect to the proviso, and not impute to the general assembly the use of language in a solemn enactment, an entire proviso, having no significance whatever. It is not one of those inaccuracies which sometimes occur in original bills, but the clause in question is an amendment to a section prescribing in whose name suits should be prosecuted, and it must be construed with reference to the general scope and purpose of the section. The first clause manifestly embraced all rights of action arising out of contracts, and all actions for torts then assignable; and if the intent and purpose of the proviso was merely to exclude from the operation of the first clause, causes of action arising out of injuries to the person, which we have seen this court had before held were not included, the idea could have been expressed in fewer words than are contained in the amendment. Our view is strengthened by the fact that the amendment was adopted recently, after the decision in *Smith v. Kennett,* and by the additional consideration that assignments of rights of action for torts are of a champertous nature, and against public policy, as was held in *Oliver v. Walsh,* 6 Cal. 458; *Young v. Ferguson,* 1 Litt. (Ky.) 298; *McGoon v. Ankeny,* 11 Ill. 558; *Dunklin v. Wilkins,* 5 Ala. 200; *Goodwyn v. Loyd,* 8 Porter, 237; *Overton v. Williston,* 31 Pa. St. 155; *Brown v. Bipscomb,* 9 Port. 472; 4 Blackstone's Com. 135.

Decisions of the court of New York have been cited which place a different construction upon the clause in question in their statute, but when the case of *Wallen v. Ry.* was decided, we were not aware that the courts

of that state had placed a different construction upon their statute, and having correctly construed our own, I am not inclined to abandon that construction and adopt one which I think erroneous. I think the meaning of the statute is as above stated, and that, so interpreted, it is a wise and salutary law, preventing sharpers and champertors from roaming about buying up claims for damages to property at a heavy discount, and prosecuting suits for injuries, which, but for their interference, might have been compromised. When *Wallen v. Ry.*, *supra*, was before us, those adjudications were not cited, nor were we aware that such decisions had been rendered. The case of *Wallen v. Ry.* was followed in a subsequent case, and having twice announced what I am satisfied is the true construction of our statute, I think we should adhere to it, however we might have held in the first instance if our attention had been called to the decisions above referred to. The proviso in question is sheer nonsense, if it does not mean what we held that it meant, in the two cases heretofore decided by us, and to hold otherwise is to attribute to the general assembly, which enacted it, gross ignorance, and to eliminate from the statute an entire proviso adopted as an amendment.