JOHN P. MORENUS AND ROBERT H. GLOVER, AS ADMINISTRATORS, ETC., OF LENORA MORENUS, DECEASED, RESPONDENTS, v. IRA CRAWFORD, APPELLANT.

*When an action under the civil damage act, brought against two persons not connected in business, may be discontinued as to one and continued as to the other — a wife may recover under the act for a horse killed by her husband when intoxicated — the action does not abate by her death and can be continued by her representatives — evidence discrediting a witness.*

In August, 1875, Lenora Morenus brought an action, under the civil damage act, against Ira Crawford, who kept a hotel at the village of Berkshire, and Nehemiah Hoag, who kept a hotel in the village of Richford, who were not connected in business, to recover the value of a horse owned by the said Lenora, which was killed by John Morenus, her husband, while intoxicated.

The first trial resulted in a judgment against both defendants, which was reversed upon the ground that a joint sale was alleged in the complaint, which was not proved. On the second trial an order was entered permitting the action to be continued against Crawford and discontinued as to Hoag. A judgment recovered by the plaintiff on the second trial was reversed because of an error in the admission of evidence. The plaintiff having died intestate, on January 3, 1886, her administrators were, by an order duly entered, permitted to continue this action, and thereafter recovered, upon a third trial, a judgment from which this appeal was taken.

*Held,* that, as the uncontroverted evidence showed that the plaintiff's intestate, a married woman, was injured in property by an intoxicated person, or in consequence of the intoxication of her husband, she was within the class of persons authorized to maintain actions under the civil damage act.

That when the action was discontinued against Hoag, and continued against Crawford alone, it became simply an action against the latter, to be prosecuted and determined as though originally brought against Crawford alone, and that the court committed no error in permitting the case to proceed against him alone.

That, as the appellant had failed to appeal from the order permitting the action to be continued against Crawford alone, he could not now ask for a reversal of the judgment upon the ground that the complaint would not sustain a several judgment.

That as the plaintiff's intestate had lost an article of personal property which diminished her estate, for which she had a right of action against her husband, and had such an action been brought it would not have abated by her death, the civil damage act extended the liability to a person who contributed to the loss by doing a certain specified act.

That the action did not abate by the death of Lenora Morenus, and its revival by order of the court and its continuance by her representatives were legal.

The defendant testified that he did not sell or deliver whisky to John Morenus on May 15, 1875, the day on which the horse was killed. The plaintiff was permitted to prove that between 1874 and 1880, inclusive, the defendant was seven times indicted and convicted of violating the excise law, five of the convictions being upon the plea of guilty.

*Held,* that this evidence was competent for the purpose of affecting the weight of his testimony.

That an objection taken by the defendant that the plaintiff, having shown part of these convictions by a cross-examination of the defendant, record evidence could not be resorted to, to prove the same and additional convictions, was untenable, as it was competent to prove the convictions by two witnesses.

APPEAL from a judgment in favor of the plaintiff, entered in the office of the clerk of Broome county on August 30, 1887, after a trial at the Broome Circuit before the court and a jury, and from an order made at Special Term, entered in the same office, August 6, 1886, directing that the action be revived and continued,

and also from an order denying a motion made for a new trial on the minutes of the justice presiding on the trial, entered in the said office on August 12, 1887.

The appeal was heard upon a case which contains all of the evidence.

May 15, 1875, a horse owned by Lenora Morenus was killed by John Morenus, her husband, while intoxicated. The horse was worth $150. These facts are uncontroverted. At this date Ira Crawford kept a hotel at the village of Berkshire, where he sold liquors to be drank on the premises, and Nehemiah Hoag kept a hotel at the village of Richford, where he sold liquors to be drank on the premises; but they were not connected in business.

In August, 1875, Lenora Morenus brought this action, under the civil damage act, against Crawford and Hoag, who separately answered. The trial, which was before a referee, resulted in a judgment against both defendants for the conceded value of the horse and costs. This judgment was reversed upon the ground that a joint sale was alleged in the complaint, which was not proved, and the proof of separate sales by each defendant did not establish a right to a joint judgment. (15 Hun, 45.)

On the second trial, which was at the Broome Circuit before the court and a jury, the court, by an order entered, permitted the action to be continued against Ira Crawford and discontinued as to Nehemiah Hoag. The second trial resulted in a judgment for the plaintiff's damages 'and costs, which was reversed because the plaintiff was allowed to prove that the defendant sold liquors without a license. (31 Hun, 85.) January 3, 1886, the plaintiff died intestate, and July 6, 1886, by an order duly entered, the administrators of the intestate were permitted to continue this action. The third trial, which was had at the Broome Circuit before a jury, resulted in a judgment for the value of the horse, with interest and costs; from which judgment this appeal is taken.

*Alexander Cumming*, for the appellant.

*F. P. Lewis*, for the respondents.

FOLLETT, P. J.:

The uncontroverted evidence shows that plaintiff's intestate, a married woman, was injured in property by an intoxicated person,

or in consequence of the intoxication of her husband. She was within the class of persons authorized to maintain actions under the civil damage act. The appellant asks for a reversal of the judgment upon five grounds, which will be considered in the order in which they are discussed in his brief.

(1.) "The complaint will not sustain a several judgment."

When this action was discontinued against Hoag and continued against Crawford, by leave of the court, it became simply an action against him, to be prosecuted and determined as though originally brought against Crawford alone. When this case was last before the General Term this question was discussed, BOCKES, J., speaking for the court, saying: "The complaint was dismissed as to one of the defendants, leaving the action to proceed against the other. In this there was no error. It was held in *McIntosh* v. *Ensign* (28 N. Y., 169), that "a plaintiff is not now to be nonsuited because he has brought too many parties into court; if he could recover against any of the defendants upon the facts proved, had he sued them alone, the recovery against them is proper, although he may have joined others with them in the action, against whom no liability is shown." (Code of Civil Pro., §§ 456, 1205; *Harrington* v. *Higham*, 15 Barb. 524; *Parker* v. *Jackson*, 16 id., 33.) The rule is the same whether the action be on contract or in tort. GROVER, J., says, in *Roberts* v. *Johnson* (58 N. Y., 613, 616), "the action was for tort. In such cases the plaintiff may proceed against any one, all, or such number of the wrong-doers as he may choose." So here the plaintiff might, as he did do in effect, consent to the dismissal of the complaint as against Hoag, and proceed against Crawford. If necessary to amend the complaint, it might be so ordered, and it would be so ordered on appeal, if necessary to sustain a just cause of action, as shown by the proof. The variance between the pleadings and proof as to the defendant Crawford was, however, quite immaterial. It in no way affected the merits of the case. We are of the opinion that the court committed no error in permitting the case to proceed against Crawford alone.

Again, the order permitting the action to be discontinued as to Nehemiah Hoag and continued against Ira Crawford alone, has not been appealed from. We are of the opinion that the complaint is sufficient to sustain the verdict and the judgment entered thereon.

(2.) "The verdict is not sustained by the evidence."

Under this point the appellant insists that the allegation in the complaint that the defendants wrongfully conspired and intended to injure the plaintiff, by selling and giving intoxicating liquors to her husband, takes the case out of the civil damage act and avers a good cause of action at common law. Reading this paragraph by itself, it is capable of that construction. But this action has been discontinued against one of the defendants, and its form and the legal effect of the complaint have been radically changed by the order. The second proposition is the first proposition, stated in a different form, and the judgment of the General Term of the third department in this action, from which we have quoted, is a sufficient answer.

(3.) "The cause of action did not survive plaintiff's death."

In *Hegerich* v. *Keddie* (99 N. Y., 258) an action begun under section 1902 of the Code of Civil Procedure, by the representative of a decedent against a person who negligently caused the death of the decedent, was held to be abated by the death of the wrong-doer, and could not be revived and prosecuted against the representative of the wrong-doer. Upon this authority it was held (*Moriorty* v. *Bartlett*, 99 N. Y., 651; reversing 34 Hun, 272) that an action begun under the civil damage act by a widow to recover for an injury to her means of support, against a person who had sold intoxicants to her husband, who drank them, became intoxicated, and by reason thereof was drowned, was abated by the death of the defendant, and that it could not be revived and prosecuted against his representative.

In the case at bar the plaintiff's intestate lost an article of personal property, which diminished her estate, for which she had a right of action (under the evidence in this case) against her husband (*Howland* v. *Howland*, 20 Hun, 472); and had such an action been brought it would not have been abated by her death. The civil damage act extends the liability to a person who contributed to the loss by doing a certain specified act. "An injury to property is an actionable act whereby the estate of another is lessened." (Code Civil Pro. § 3343, sub. 10.) Under this definition this action is for the recovery of damages for an injury to the plaintiff's property, and is saved by the Revised Statutes, which provide:

" § 1. For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or after his death by his executors or administrators against such ´wrong-doer, and after his death against his executors or administrators, in the same manner and with like effect in all respects as actions founded upon contracts.

" § 2. But the preceding section shall not extend to actions for slander, for libel or to actions of assault and battery, or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator." (2 R. S., 447.)

In *Cregin* v. *The Brooklyn Crosstown Railroad Company* (75 N. Y., 192), Judge RAPALLO, in discussing the above section, said : " Section 1 preserves from abatement by death, actions for wrongs done to the property, rights or interests of another. This language is very broad and embraces a large class of actions. It is not confined to direct injuries to property, but includes all injuries to the rights or interests of a deceased party, except such as are enumerated and exempted in the following section : No. 2. These are actions for slander, libel, assault and battery, false imprisonment, and actions on the case for injuries to the person of the plaintiff. These exceptions necessarily prevent the surviving of any action for slander, libel, assault and battery or false imprisonment, or for any injury to the person of any deceased plaintiff, however seriously such injury may have affected his property or estate. But they do not cover an action for a wrong done to his rights or interests, even though this wrong may have been effected by means of an injury to the person, provided the injury was not to the person of the plaintiff, but of some other party." The doctrine of this case was reaffirmed by the Court of Appeals when the case was again before that court. (83 N. Y., 595.)

In *Hegerich* v. *Keddie* (*supra*) Chief Judge RUGER said : " If the language of the statute applicable to this case be collocated and read according to its plain meaning and intent, the following sentence would seem to be the result : Actions by and against executors and administrators for wrongs done to the property rights or interests of their intestate or testator are hereby authorized, but so far as

such wrongs have heretofore been remediable by actions of the case for injuries to the person of the plaintiff, or to the person of the intestate or testator of any executor or administrator, they shall not survive the death of the person to whom or by whom the wrong is done. The wrongs referred to in these sections are such only as are committed upon the 'property rights or interests' of the testator or intestate, and to a cause of action for which the executors and administrators acquire a derivative title alone. The whole scope and design of the statute is to extend a remedy already accrued to the representatives of a deceased party, and provide for the survival only of an existing cause of action." (Page 262.)

*    *    *    *    *    *    *

" From the same review, it is quite evident that the authors of the statutes intended explicity to provide for the abatement of causes of action for personal injuries occurring to the plaintiff, or to his intestate or testator. The assignability or survivability of things in action have frequently been held to be convertible terms, and, perhaps, furnish as clear and intelligible a rule to determine what injuries to property rights or interests are meant by the statute as it is possible to lay down." (*People* v. *Tioga Com. Pleas*, 19 Wend., 73 ; *Zabriskie* v. *Smith*, 13 N. Y., 322)

" The rights of property only which are in their nature assignable, and capable of enjoyment by an assignee, are those referred to in the statute. Such rights as arise out of the domestic relations clearly do not possess the attributes of property, and are not assignable by the possessor." (Page 266.)

In *Brackett* v. *Griswold* (103 N. Y., 428), Judge FINCH, in speaking for a unanimous court, said : "We have not been unmindful that in our discussion of this question we have assumed the assignability of a cause of action as a test, treating that and survivability as convertible terms."

Section 1910 of the Code of Civil Procedure provides :

" § 1910. Any claim or demand can be transferred, except in one of the following cases :

" 1. Where it is to recover damages for a personal injury or for a breach of promise to marry.

" 2. Where it is founded upon a grant, which is made void by a statute of the State ; or upon a claim to or interest in real prop-

erty a grant of which, by the transferor, would be void by such a statute.

"3. Where a transfer thereof is expressly forbidden by a statute of the State, or of the United States, or would contravene public policy."

This section relates exclusively to substantive law, but not to the law of procedure; and subdivision 11 of section 3347 does not except this cause of action from the operation of the section. The cause of action arose in 1875; and in 1880, by the operation of the section, it became assignable, and was assignable at the date of the death of Mrs. Morenus; and if assignability is a test of survivability, the action has not abated. The action did not abate by the death of Lenora Morenus, and its revival by order of the court, and its continuance by the representatives, is legal.

(4.) "The court erred in its rulings on the trial."

The rulings at folios 5, 63 and 64 relate to the question of abatement, which has been discussed under the third point and determined in favor of the plaintiff, which renders a discussion of these rulings unnecessary.

The defendant testified that he did not sell or deliver whisky to John Morenus on the 15th of May, 1875. The plaintiff was permitted to prove (pages 31 and 32) that between 1874 and 1880, inclusive, he was seven times indicted and convicted of violating the excise law, five of the convictions being upon the plea of guilty. This was competent, for the purpose of affecting the weight of his testimony. (Penal Code, § 714; Code of Civil Pro., § 832; *People* v. *Burns*, 33 Hun, 296; *People* v. *Elmore*, 3 N. Y. Crim., 264; *People ex rel. Kopp* v. *French*, 102 N. Y., 583.) The objection, that having shown part of these convictions by cross-examination of the defendant, record evidence could not be resorted to, to prove the same and additional convictions, is untenable. It was competent to prove the convictions by two witnesses. No errors were committed in the rulings on the trial.

(5.) "The judgment is unsupported by the evidence."

John Morenus testified that defendant sold and delivered him whisky May 15, 1875, some of which he drank in the presence of defendant, and a pint of which he carried away in a bottle. Others testified to drinking whisky on that occasion with Morenus, which was delivered by the defendant and drank in his presence. One

witness testified that defendant said to him after the accident that he did sell Morenus whisky. On the contrary, defendant testified that he did not sell Morenus whisky on the 15th of May, 1875, and other witnesses testified that Morenus told them on various occasions after the day in question that defendant gave him nothing but cider. This presented a fair question of fact for a jury, the verdict of which will not be disturbed, especially in view of the fact that a former jury and a referee of great learning and experience have previously found the facts in the same way.

The judgment and orders are affirmed, with costs.

KENNEDY, J., concurred; MARTIN, J., not sitting.

Judgment and order affirmed, with costs.