## WINN *v.* GILMER.

*(Circuit Court, W. D. Texas.  1886.)*

1. REMOVAL OF CAUSE—JURISDICTION—CITIZENSHIP.
   The citizenship of a party moving from one state into another is controlled by the intention in that regard with which he takes up his residence in the new place.
2. SAME—REMOVAL FROM STATE—INTENTION.
   A party who has moved from one state into another cannot avail himself of the jurisdiction of a federal court upon the claim of being a non-resident, after showing by his acts and declarations, before the litigation commenced, an intention of becoming a citizen in his new place of abode.

Suit for Debt.
*Leo. Tarleton,* for plaintiff.
*Houston Bros.,* for defendant.

TURNER, J.  "Citizenship," as used in the law under consideration, means residence with intention of remaining permanently at that place.  A man may reside in a state for an indefinite period of time without becoming a citizen, but the moment a man takes up his residence in a state different from that where he formerly was domiciled or was a citizen, with intent and purpose of making the new place of residence his future permanent home, that moment he loses his former domicile, and becomes domiciled in the new place; or, in other words, he ceases to be a citizen of the former place of residence, and becomes a citizen of the state of his adoption.

The question for me to decide is whether Mr. Winn, the plaintiff, and his assignor, from whom he claims a part of his alleged right of action at the time this suit was instituted, were citizens of Texas.  I put the question this way, because, if not citizens of Texas at that time, it will be conceded that this suit may be properly prosecuted here.

The query raises two questions of fact:

*First.* Where did these parties reside at the time this suit was brought?  As a simple question of residence, it may be safely said, in San Antonio.  Both these parties were single men, leading a sort of nomadic life, but for the last two or three years the evidence indicated very clearly that San Antonio was headquarters, and the place of residence, for business purposes, or for choice or pleasure, it matters not, for the purpose of this decision.

*Second* question is, was that residence coupled with an intention to permanently remain here?  From the nature of the case, no person can judge of the secret intentions dwelling in the minds of other men.  The resolutions, intentions, and desires of the mind are made manifest by acts which often reveal the inward intention as clearly as it would be if the mind of another was so constructed that it could

be opened and read as we read from a printed volume. To illustrate: Suppose a man should approach, and deliberately draw a pistol, and discharge it at the person he was approaching, and should kill him by so doing, we would all say that the act was but the execution of a resolution or determination of the mind in the slayer to do great bodily injury to the person slain, and no declaration of innocent intention, however strongly asserted, would convince the observer that the act was other than willful, and done in order to carry out a previously formed design. A man throws into the sea an article of value; we know he intended to part with its possession forever.

I have given these strong and abstractly convincing acts to illustrate why it is that we may properly judge of men's intentions by their acts, when not accompanied with declarations; and sometimes we would conclude that the act spoke louder than the declaration, if they were inconsistent with each other. Hence arises the familiar saying that "actions speak louder than words."

The question for me to decide, from all the facts and circumstances revealed by the evidence, is whether, after carefully weighing all the evidence, the citizenship of the plaintiff is such as authorized him to bring this suit in this court. The wisdom displayed in permitting a citizen of another state to sue a defendant who resides in this state has never been doubted, and that right should be carefully guarded and protected, whenever the citizenship is of different states. We know, from observation and experience, that association begets friendship, and friendship begets favoritism and bias in favor of those of whom we think kindly; and a stranger, who should come into a community, and sue a man of good standing, and be compelled to take a jury from the friends and acquaintances of the defendant, would, without any intention on the part of the jury, certainly have to contend against the bias which unconsciously, but inevitably, springs from friendly association. Hence the justice of the law which has created a forum where non-residents can litigate their legal rights; where juries are obtained from widely-separated communities, and therefore not likely to be influenced by any other desire than to administer the law. While this is true, it is none the less true that the right to be tried by one's own peers, and to litigate his rights in the courts of his state, is a right and privilege none the less valuable, and, perhaps, we may safely say more satisfactory to the defeated party than would otherwise be the case.

When a young man leaves the parental home, and strikes out into the world; goes to another state; engages in business for a considerable length of time,—the natural inference would be that he intended to build himself up a new home, and domicile in the state where he had taken up his residence. So, likewise, if a man of years, overtaken by misfortune,—perhaps reduced from luxury to penury and want,— with no family ties to bind him, and the home of former years has passed from him, and from under his control, in the desperation of

his situation abandons the state where these misfortunes have overtaken him, and remains away for a term of years,—enters into the business of life with a residence in a neighboring state,—the inference would naturally arise that he had no desire or intention of longer remaining in the locality of all his misfortunes.

Thus much, I think, may safely be said with reference to what would be the natural inference from acts referred to, and these facts are made to appear by the plaintiff's evidence. The evidence of the defendant (which is not disputed) is that plaintiff, at the dinner-table of defendant, declared his intention to support Mr. Cleveland, and the defendant declared his intention to vote for Mr. Blaine; whereupon plaintiff announced his intention to kill his vote, which was understood to mean, and according to the common use of that expression did mean, that the plaintiff intended to vote for the candidate of his choice. That the conversation was had, there can be no doubt. This declaration, together with the further declaration that he expected to remain upon and run the ranch, certainly justified the defendant in concluding that the plaintiff had become a citizen of the state. Had it been shown that the plaintiff had exercised the privilege of voting, it would have been conclusive evidence of his having adopted this state as his domicile, and he would not be heard to dispute it, as the law regards that act as conclusive evidence of intention.

It is in evidence, as I have stated, that he said he would vote. It is in evidence, however, that he did not; and it is in evidence that he said he could not vote because not a citizen. The assertion that he would vote (for I hold the declaration in evidence is equivalent to that) is just as persuasive as the declaration that he would and could not, so far as mere declaration is concerned.

The question then arises, is there any reason why one should have more influence in determining upon the weight of this evidence than the other? At the time of the declaration that he would vote, good feeling existed, and no reason can well be assigned for any motive to make such a statement other than to give utterance to a formed design; and the same may be said with reference to the declaration about residing upon and running the ranch in Texas; and if, in fact, the design was formed to become a citizen of Texas at any period during his residence here, he became *ipso facto* a citizen of the state of Texas, (he being a native of this country,) and any subsequent change of purpose would not restore former citizenship in another state, so long as he continued to reside here. On the other hand, it may be fairly inferred from the evidence that the declaration of not voting because not a citizen was made after the possibility of a suit was made evident, and in that case, if it was regarded as any benefit to sue in this court, then there was a motive in the latter declaration, where none can be assigned for making the former declaration of intention to vote against the vote (or to kill the vote) of defend-

ant. This being so, it follows that, in weighing the evidence, the declaration made when no motive for a misstatement is shown, should outweigh the other one, where a reason can be assigned for making a different statement.

It is but recently that men who are interested in a cause are permitted to testify in the case. The old rule resulted from a knowledge of human weakness, where one's own interests are involved. While a different rule now prevails, human nature has not changed, and if in weighing evidence, and especially where there is a conflict, we forget what self-interest has to do with human action, we come short of duty. I do not wish to be understood by these remarks as reflecting upon the statement of any witness, because nothing has been said or done that would lead to the conclusion of intentional misstatement, but to show the reasons why one statement may properly claim preference over another, made under different circumstances, by the same person, where influenced and controlled by different motives.

The question, then, arises, shall a person so act and make declarations that justify the belief in the minds of those who deal with him that a certain fact exists, and when it suits his interest or convenience assert the contrary? I do not wish to be understood as asserting in this case that the doctrine of estoppel applies, because the defendant has done no act prejudicial to his interest, based upon what plaintiff has said or done. But I do mean to say that a man ought not to so act as to justify the belief that a certain condition of things exists, and then, when it becomes to his interest to declare a different state of facts to exist, and the question presented is rendered extremely doubtful, that he ought not to have the benefit of that doubt.

The evidence of Mr. Curiton, plaintiff's assignor, is not that he ever intended to return to *Alabama* to live. It is true he said he thought he was a citizen of *Alabama*, if he was a citizen anywhere. This was but an opinion, and the evidence fails to satisfy me that he had not ceased to be a citizen of Alabama.

In conclusion, I may say that acts and declarations of any person, in his own interest, after a controversy has arisen, are received with disfavor. Yet, under the law, a man may be a witness in his own case; but with this privilege comes the duty to those who weigh evidence to discriminate between such evidence as may properly have weight and such as, by the rules of law, should not. In this case, if I have reached a wrong conclusion,—which I do not believe,—the plaintiff must rest satisfied, because his own conduct and declarations, tending to show citizenship here before any suit was anticipated, have misled me, which acts and declarations I feel in duty bound to hold binding, although those of later date are different. Cause dismissed.