THAYER, Circuit Judge,
after stating the case as above, delivered the opinion of the court.
The first question to be considered is whether any error was committed on the trial of the plea in abatement relative to the citizenship of the plaintiff, Bolles. In this behalf it is assigned for error that the trial court permitted the plaintiff to testify, in response to a direct question, that he was a citizen of New York up to April or May, 1894, and that it also permitted two other witnesses to testify that he was a citizen of New York prior to the spring of the year 1894. With respect to this assignment, it is only necessary to say that, in our opinion, no material error was committed in allowing the plaintiff himself to testify that he was a citizen of the state of New York up to a given date. Citizenship is largely a matter of intention. When a citizen of a state has removed to another state, it is a very common *508 practice to permit him to declare what his intentions are with respect to making the latter state his permanent place of abode. It is his intention to make the place to which he may have removed his permanent place of domicile which determines whether he has become a citizen of that state, and definitely abandoned his former residence. As a general rule, a person’s intentions in that respect can be ascertained in no other way than by his declarations, and for that reason he is permitted to state what his intentions are or were, when the fact becomes material in a judicial proceeding. Such statements, as a matter of course, are not conclusive on the question of his intention, but we have no doubt that they are competent evidence in the party’s own favor. When the plaintiff testified, therefore, that he was a citizen of New York up to April or May, 1894, it was but another form of stating that his intention to abandon his residence in New York and to take up his abode in Colorado was not formed until the latter date. We perceive no objection to such testimony, coming as it did from the plaintiff himself. But a different view must be taken of similar testimony which was elicited from third parties, to wit, from the witnesses Palmer and Edsall. These witnesses had no knowledge of the plaintiff’s intention to remain a citizen of New York, except as that intention was manifested by his acts, and they should have been required to state the facts within their observation on which their opinion that he was a citizen of New York prior to the spring of the year 1894 was founded. The jury were equally as competent as these witnesses to decide whether the observed facts indicated a purpose on the part of the plaintiff to remain a citizen of New York until the time stated, and it was the province of the jury to decide that question uninfluenced by the opinions of witnesses.
Another specification of error is that the trial court erred in permitting the plaintiff to show that in a deed for certain property which the plaintiff bought in June, 1893, and in a will which he made in October, 1893, he was therein described as “Richard J. Bolles, of the city of New York.” We are not able to say that this evidence was erroneously admitted. It tended to show that at the date of these instruments the plaintiff regarded himself as a citizen of New York, and had not formed the intention of making his home in Colorado. It was relevant testimony for the purpose last stated, and ought not to have been excluded, unless the trial court was satisfied that the plaintiff had thus described himself as a citizen of New York for the purpose of influencing the decision in this case on the question of citizenship. As the suit at bar was not brought until December, 1893, and as the answer raising the issue of citizenship was not filed until July 2, 1894, there seems to be no adequate ground for the inference that the testimony in question was manufactured for the purpose last stated.
Nor are we able to say that there was any error in the instructions on this branch of the case. With reference to the issue of citizenship, the material parts of the charge were as follows:
“Now, citizenship is a matter of residence and intention. If one come from the state of New York, or from any other state, to this state, and in coming he has no intention to return to New York, hut intends to take up his residence *509 and reside here permanently, he thereupon and at once simply allies himself to this state, and becomes a citizen of this state. But one may have a residence in one state while his citizenship continues in another state. If he comes here for a temporary purpose, or if he be undecided at the time of coming as to whether he will return to New York and continue to live there, or take up his residence here, he will not become a citizen of the state of Colorado until he has decided to make his permanent residence and acquire citizenship in this state. So that it is entirely true that the intention and the residence must unite in order to form what is called in law a permanent domicile, which is equivalent to citizenship. And so, if the plaintiff, * * * in coming to this state, had no intention, at the time of his coming or afterwards, to acquire a residence, and become a permanent citizen of the state, if it was his desire to maintain his citizenship in the state of New York, he would not .acquire a residence or citizenship here until he made up his mind to reside here permanently, and to abandon his residence and citizenship in the state •of New York. Residence is generally described as the place where one lives. It means literally, according to its derivation, a sitting down and staying for a time; and so, when one goes to another place from that in which he has his permanent home, and sits down there for a time, but not with the intention to remain there permanently, it is said that, while he has his residence in that place, he still remains a citizen of the place from whence he came. I do not think it necessary for me * * * to advert to any of the evidence in the •ease. You have heard it all. It was all received with intent that you should be able to determine when, if at all, the plaintiff became a citizen of this state. It is said that this was at the time he made up his mind to reside here permanently, and abandoned his residence in New York, * * * in the early part of the year 1894, which was after this suit was brought. You will remember that it has been stated a number of times in your hearing that this suit was brought on the 6th of December, 1893. If, upon all the evidence before you, you are of the opinion that he did in fact make up his mind to become a resident and citizen of the state of Colorado prior to that time, * * * then, of •course, your finding should be for the defendant. But if you are of the opinion that he did not become a citizen of the state—that is to say, that he did not abandon his home and residence in New York—until the spring of 1894. * * * then he could bring his suit in this court as he did.”
The instructions, as thus given, were applicable to the facts proven ■on the trial. They fully covered the point in issue, and any further instructions on the question of citizenship, if such instructions had been given, would have served to confuse, rather than to enlighten, the jury.
Passing to the merits of the controversy, the first question to be noticed is whether the trial court erred in sustaining the demurrer to the third and fourth defenses stated in the answer. The fourth plea to which the demurrer was addressed averred, in substance, that the contract on which the suit was founded had been canceled and discharged by mutual agreement of the parties thereto. It is suggested in argument that the allegation that the contract was canceled by mutual agreement of the parties is merely an inference of the pleader from the fact first alleged in the plea that on a certain occasion the plaintiff, Bolles, had stated to the defendant, Rucker, that he did not desire to be further bound by the provisions of the agreement. It is urged, in substance, that the plea is bad, because it avers no more than that such a statement was at one time made by the plaintiff to the defendant. But obviously this is not a correct view, for, after that fact is stated in the plea by way of inducement, the pleader proceeds to allege in clear and concise language that it was thereupon agreed by and between the plaintiff and the defendant, for a good *510 and sufficient consideration, moving from the defendant to the plaintiff, that the agreement in question should be terminated, and that the interest thereby acquired by the plaintiff, Bolles, in the suit against Wheeler and others should cease and determine. We perceive no reason why the plea did not state a good defense to the action, such defense consisting in a mutual agreement made by the parties before this suit was commenced to the effect that each party would discharge the other from the obligations imposed by the contract on which the suit is founded. Such an agreement was clearly pleaded according to its legal effect, and, in our judgment, the demurrer to the fourth plea should have been overruled,
A more debatable question is whether the demurrer to the third defense was properly sustained. By that defense the pleader endeavored to show that the contract in suit was void for champerty and maintenance. We are of opinion that the contract on its face-was not void on either of the grounds last mentioned, whether the question be considered in the light of the Colorado statute concerning-maintenance, or in the light of the common law as generally understood and enforced in this country. The agreement, by its terms, purports to be no more than a sale by Bucher to Bolles of a one-fourth interest in a judgment for money which he (Bucher) might recover in a pending lawsuit. Bolles did not agree to furnish any aid or assistance in the prosecution of the suit against Wheeler, or to interfere with the litigation in any way, the agreement being, on the-contrary, that Bucher should prosecute said suit at his own proper-cost and expense. Aor was there any agreement that Bucher should devote the money which he had received from Bolles to the further-prosecution of the suit against Wheeler and others. The former was-at full liberty to appropriate it to any other use which he saw fit, and, for aught that appears, he may have devoted it to other uses. Furthermore, Bucher did not bind himself not to compromise the pending suit if he received a favorable offer of compromise, which he desired to accept, the only stipulation in that behalf being that, if the-suit was compromised, Bolles should receive not less than $75,000 on paying to Bucher an additional $10,000. The purpose of this stipulation would seem to have been not to prolong the litigation, but to secure to Bolles an adequate return for his money, considering the-character of the investment. We-are not able to say that this contract discloses an officious intermeddling by a third party in a suit which in no wise concerned him, with a view to promote litigation, within the meaning of the Colorado statute on the subject of maintenance,[1] for, according to the modern view, a person has a right to> assign an interest in a chose in action which he happens to own, and this right exists although the claim happens to be at the time in litiga *511 tíon.' The old rule that choses in action are not assignable has not only been abolished, but the prevailing doctrine is that causes of action for torts to property, real or personal, which survive to executors or administrators, are also assignable. Snyder v. Railway Co., 86 Mo. 613; Pom. Rem. & Rem. Rights, § 147. Under a variety of circumstances which may be supposed, a man might find it necessary to sell or hypothecate an interest in a claim which happened to be in litigation for the purpose of raising money wherewith to prosecute his business successfully, or to assert or defend his rights in the courts; and it would be a great hardship if he were denied the right to raise money by such means, or if money so obtáinea could not be recovered. We can perceive no reason, therefore, founded either on considerations of public policy or the terms of the Colorado statute,, why the contract sued upon should be pronounced invalid.
It is insisted, however, that the plea avers certain facts, not disclosed by the contract itself, which render it invalid. A careful analysis of the plea will show, we think, that the only fact tending to overthrow the agreement which the plea avers is that the plaintiff, Bolles, proposed to buy, and did purchase, an interest in the claim against Wheeler, for the purpose of preventing a compromise of the claim and prolonging the suit that had been commenced to enforce it. The question then arises whether the agreement is rendered unlawful by the motive which prompted one of the contracting parties to execute it, although the contract, when judged by its provisions, is yalid and enforceable. The law furnishes some examples, notably in the case of fraudulent conveyances, where an agreement, otherwise valid, may be avoided because of the motive which induced the parties to execute it. So, when it appears that a contract for the sale of a commodity is merely colorable, and made to cover a gambling transaction, no delivery of the commodity sold being intended by either party, the law pronounces the same to be void. Such contracts are held invalid on account of their fictitious character, because neither the vendor nor the vendee intended to do what they in terms agreed to do, but rather to lay a wager on the rise and fall of prices. It is also true that a contract valid on its face may be impeached by showing that the consideration on which the promises, or some of them, rest, was the doing of an act which was either unlawful, immoral, or opposed to public policy, or a promise to do acts of that kind. All of this is familiar law. Ordinarily, however, a contract which is valid on its face, in that it does not require either party to do an act that is unlawful, immoral, or opposed to public policy, will be enforced, regardless of the motive which may have inspired one of the parties to execute it. The ulterior motives of the parties to a contract are usually immaterial when the thing agreed to be done is lawful, and does not injuriously affect the public welfare, and the consideration paid or promised for doing the act contemplated was not illegal. West Plains Tp. v. Sage, 32 U. S. App. 725, 16 C. C. A. 553, and 69 Fed. 943. It is manifest from the averments of the plea that the contract in suit was neither fictitious nor colorable. The parties to the agreement evidently intended to do precisely what it bound them to do, nothing more and nothing *512 less, for while the alleged proposal to supply money to assist in the prosecution of the pending suit against Wheeler and others may have been held out as an inducement when the negotiations which culminated in the contract began, yet, when the contract was executed, it took the form of a bona fide sale of an interest in the claim for a stipulated sum, and did not bind the purchaser to contribute a cent towards the maintenance of the litigation, nor obligate the defendant, Rucker, to use the money which he had received in the prosecution of the pending suit. It is clear, therefore, that there was no arrangement or understanding existing between the parties binding them to do or refrain from doing any acts except such as were distinctly specified in the agreement.- The plea does not even aver that Rucker’s motive in entering into the agreement was to obtain funds wherewith to further prosecute his suit against Wheeler. Moreover, the consideration moving from one party to the other, and upon which their promises were founded, was clearly set forth and described in the agreement. The contention, therefore, that the plea shows the agreement to have been unlawful, rests upon the single proposition that it was invalid, because of the motive which induced the plaintiff, Bolles, to execute it; and we are not able to assent to that proposition. We are of opinion that the contract cannot be impeached by showing that one of the parties thereto was influenced by improper motives in executing it, inasmuch as the contract itself did not bind either party to do any act that can be esteemed unlawful, immoral, or against public policy. It results from these views that the demurrer to the third defense was properly sustained.
It is further contended that an error was committed by the trial court in instructing the jury relative to the issues raised by the fifth plea contained in the answer. With reference to that defense, the court instructed the jury that the plea averred, in substance, that the plaintiff, Bolles, had renounced and rescinded the agreement on which the suit is founded, and had released the defendant from all obligations thereon. It further charged the jury in these words:
“To make this defense available, it must be made to appear by the evidence that there was some consideration moving to the plaintiff, Bolles, to support the release and rescission of the contract as alleged by the defendant. The consideration need not necessarily be the payment of money, but it must be something beneficial to the plaintiff, and if, from the evidence in this case, you do not find that there was any consideration for the release alleged in this fifth defense, then, upon this issue, you should find for the plaintiff.”
An exception was saved to this instruction, on the ground that it confined the consideration necessary to support the release to “something beneficial to the plaintiff,” ignoring the fact that the consideration for the release might as well have consisted in the doing of something that was detrimental to the defendant. We have felt some doubt as to whether the trial court properly construed the fifth defense in holding, as it appears to have done, that the defense stated in the plea was a release founded upon a consideration moving from the defendant to the plaintiff. It seems more probable, we think, in view of the character of the fourth defense, that by the fourth plea the defendant intended to plead a release of the contract by *513 breach—that is to say, that while the contract was in a measure executory, he (the defendant) had been discharged from all obligations under the same by the plaintiff’s refusal to further execute the agreement on his part. This would seem to be the character of the defense which the defendant intended to make in the fifth paragraph of his answer. But, be this as it may, the trial court clearly erred in holding that the release could only be supported by showing that something of value was received by the plaintiff. It is familiar law that the doing of an act which is detrimental to one party to a contract will support a promise made by the opposite party, as well as a benefit conferred on him by whom the promise is made. If one party to a contract agrees to release the opposite party therefrom in consideration of his doing some act which he is under no obligation to do, the doing of that act is a sufficient consideration for the release, although it was not beneficial to the first party. Violett v. Patton, 5 Cranch, 142; Dyer v. McPhee, 6 Colo. 174, 193; Clark v. Sigourney, 17 Conn. 517. In the case at bar there was some evidence tending to show that Bolles requested Rucker to compromise his suit against Wheeler, promising the latter that if he did so he would release him from all obligations under the contract in suit; and that the compromise with Wheeler was made in pursuance of such request. In any aspect, therefore, in which the case may be viewed, the instruction above quoted concerning the fifth defense was misleading and erroneous. Some other questions of less importance have been argued by counsel, but, for the reasons already disclosed, we think that the judgment must be reversed, and a new trial granted. It is so ordered.

 “If any person shall officiously intermeddle in a suit at common law or in: chancery, that in nowise belongs to or concerns such person, by maintaining or assisting either party with money or otherwise, to prosecute or defend such suit, with a view to promote litigation, every such person so offending shall be deemed to have committed the crime of maintenance, and upon conviction thereof, shall be fined and punished as in cases of common barratry. * * Mills’ Ann. St. Colo. 1891, § 1299.