COREL v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court, W. D. Missouri, W. D. June 15, 1903.)

1. JURISDICTION OF FEDERAL COURT—RESIDENCE OF PARTIES—EVIDENCE OF CHANGE OF DOMICILE.

Plaintiff, an unmarried man, who for a number of years had an established domicile in Missouri, where he practiced his profession as a dentist, residing with his mother and sister, filed on a homestead claim in Oklahoma, which at the end of 14 months he proved up and sold. During that time he made a number of trips to Oklahoma, remaining at no one time longer than about two months, and returning each time and after the sale to Missouri, where his mother and sister remained. He built

¶ 1. Diverse citizenship as ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

a small house of one room on the homestead in which another family resided, but it did not appear that he had any furniture in the house, or had made any preparation for a permanent residence there, nor was there evidence of any statements made by him showing such an intention. *Held*, that such facts were insufficient to establish a change of domicile which would deprive a federal court in Missouri of jurisdiction of an action commenced in a court of the state against a foreign corporation before plaintiff proved up on his homestead, and removed by defendant.

On Plea to Jurisdiction.

Wallace, Wallace & Culbertson and G. B. Silverman, for plaintiff. F. P. Sebree, for defendant.

PHILIPS, District Judge. The plaintiff has interposed a plea to the jurisdiction of the court, on the ground that at the time of the institution of the suit in the state court, and the time of its removal therefrom by the defendant to this court, the plaintiff was a citizen of Oklahoma territory, and, the defendant being a nonresident corporation of the state of Missouri, this court has no jurisdiction over the parties.

The evidence shows that the plaintiff, an unmarried man, for many years prior to July 18, 1901, was a citizen of the state of Missouri. He was a practicing dentist at Kansas City, with an office equipped with instruments and appliances for the prosecution of his profession. He and his mother and sister kept house in Kansas City, where he made his home. In connection with his sister and other parties he went to Oklahoma on the opening of that territory for the purpose of registering a number to draw a homestead, under the act of Congress opening up the territory to settlement. He made this registration on the 18th day of July, 1901, and immediately started on his return home to Kansas City. On this return trip, on July 19, 1901, he received an injury by reason of a collision on the defendant's railroad, for which this action was instituted by him in the state circuit court at Kansas City, Mo., on the 29th day of November, 1902, for the recovery of the sum of $50,000 damages.

On his return to Kansas City he went to the hospital for treatment. His registered number having drawn a right of entry, he returned to Oklahoma on August 7, 1901, and on the 9th day of the month made his filing of said claim on a quarter section of land near Hobart, in said territory, and immediately returned to the hospital at Kansas City, where he remained for a short time; and then went to his home in said city, where he remained until January, 1902, when he returned to said Hobart, and had a small frame house, 12 by 20, of one room, and one story high, erected on the homestead, which cost about $200, and returned to his home in Kansas City about the 7th day of February, 1902, where he remained until March 18th, and returned to Oklahoma, where he remained until April 19th, when he returned to his home in Kansas City. Excepting a part of the time when he visited a sister in Kansas, he remained in Kansas City until the 6th day of August, 1902, when he returned to Oklahoma, and remained until October the 18th. He had a friend to move into the house built on his homestead, who, with his own

team, plowed about one acre of ground in connection with the house, and raised some vegetables thereon. He did not hire this tenant, nor does he seem to have had any contractual arrangement with him by which he was obligated to pay him anything for remaining there. I take it that this was done in order to carry out a simulated settlement by way of occupation of the premises, to comply with the homestead law. While on this last visit to Oklahoma plaintiff remained in this house on the premises with said occupant. He returned to Kansas City on or about October 18, 1902, to his customary home, and remained there until February 18, 1903. While so here he brought this suit in the state court on November 29, 1902, and it was removed into this court on January 12, 1903, the petition for removal alleging that he was a citizen of the state of Missouri. He returned to Oklahoma about the 18th day of February, 1903, to make his final proof under the homestead law, which was made on the 24th day of February, 1903; and on the 10th day of March, 1903, pursuant to negotiations, or a proposition of sale, made by him when he was in Oklahoma the last preceding visit, he sold his homestead claim through an agent to one Stafford, and returned immediately to Kansas City, and stayed at his usual place of residence until the 17th day of April following, which was about 10 days before the beginning of this term of court. He went to said Hobart, in Oklahoma, and boarded at a hotel, and while there invested some money, which he had recovered on some accident insurance policies growing out of said injury, in the purchase of some vacant lots in said town, bought for the purpose of speculation.

There is a marked distinction between domicile and residence. The term "residence" simply indicates the place of abode, whether permanent or temporary; "domicile" denotes a fixed, permanent residence, to which, when absent, one has the intention of returning. A party may have different residences, but he can have but one domicile at the same time. Am. & Eng. Enc. of Law, vol. 10, pp. 8, 9.

In Mitchell v. United States, 21 Wall. 352, 22 L. Ed. 584, the court say:

" 'Domicile' has been thus defined: 'A residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.' By the term 'domicile,' in its ordinary acceptation, is meant the place where a person lives and has his home. The place where a person lives is taken to be his domicile until facts adduced establish the contrary. * * * A domicile, once acquired, is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject."

This question of domicile must be determined from the place of residence and the intention. Mere residence for a short time is not proof of citizenship. Wolfe v. Hartford Life, etc., Insurance Company, 148 U. S. 389, 13 Sup. Ct. 602, 37 L. Ed. 493.

The question of intention is to be gathered from the acts of the party, and even his mere statements or declarations are not conclusive. Winn v. Gilmer (C. C.) 27 Fed. 817; Rucker v. Bolles, 80 Fed. 504, 25 C. C. A. 600; Alabama G. S. R. Co. v. Carroll, 84 Fed. 780, 28 C. C. A. 207.

Where the plaintiff, as in this case, had for a number of years established his domicile in the state of Missouri, where he was prosecuting, as the evidence shows, a lucrative occupation as a dentist, with an office which he retained for some months after his location of the homestead in Oklahoma, the burden of proof rests upon him to show that this established domicile was changed, and that he had in fact not only gone to Oklahoma territory to locate a tract of land under the homestead law, but that prior to this controversy he had gone there with the fixed purpose in his mind to remain permanently. This fact is usually evidenced by the act of residing at the newly acquired home, accompanied by statements or declarations of the intention of the party, and transferring to this new residence his personal effects and the like.

The homestead law and regulations of the department do not require, in order to perfect a homestead entry, that the beneficiary should do more than to make settlement on it, or have improvements made indicating a compliance with the law. Courts will take notice of the perfunctory manner in which these required improvements on such settlements are conducted. The homesteader may do this through another as his agent or representative, while he does not actually go and reside upon the ground. Under the homestead law, after 14 months, the party can sell his claim, just as the plaintiff in this case did. The moment he made his selection and entry of the land he returned to Kansas City, and this quite clearly shows that when he did return to the territory it was merely for the purpose of beginning the required improvements on the land. He remained there until his house was built, and returned immediately to Kansas City. The longest he remained there prior to the institution of this suit was about two months in the summer and fall of 1902, when he remained in the house with the tenant. From October 18th he remained in Kansas City, and only returned to the territory for the purpose of making his final proof. And the court is justified, from all the facts and circumstances in the case, in concluding that he so returned for the purpose of consummating the sale of his claim, and as soon as that was accomplished he returned again to his usual residence, in Kansas City.

It is true the plaintiff testified that his reason for returning to and remaining in Kansas City, as he did, was to receive proper medical treatment; but his cross-examination touching this matter shows that the treatment he received here was the occasional administering of electricity and the taking of some medicine. He did not introduce his physician, residing here, to show what this treatment was or how frequent it was; nor did he introduce his sister or his mother, with whom he kept house under a joint family arrangement, to show by them that he had ever made any declaration of his intention or purpose to remain permanently on his homestead in Oklahoma. Of all persons conceiv-

able, those would have been the ones to whom he would likely have indicated such a purpose. Nor did he take the testimony of the person who occupied his homestead to show any statements made to him prior to the institution of this suit or afterwards, or to any preparation he had made for a permanent occupation of the homestead. It does not appear that he bought any furniture for the house, or made any of the usual preparations for permanent occupancy. It does not appear that he even took his trunk and personal effects to the homestead or to Oklahoma. On the contrary, it appears that, outside of his trips to Oklahoma and his short stays there, it was perfectly consistent with the idea that they were confined alone to the business of perfecting his homestead entry to final proof; and that when he was there between August and October, 1902, he discussed with the real estate agent, through whom he afterwards sold the land, propositions of sale, in which he made him a price connected with his perfecting his final proofs; and that when he did return there some four months afterwards he made his final proofs, and at once sold out his claim and returned to Kansas City; and by continuing his home during the greater part of the time he was in Kansas City at his usual place of residence there was nothing to indicate to the public any change of residence.

In view of the fact, as shown by the plaintiff's testimony, that he was so badly disabled that his lower limbs were and are partially paralyzed, and that he regards his injuries as permanent, and that when he made his trips, or at least the most of them, to Oklahoma, he had to be attended by an assistant, it is incredible to my mind that when he went to Oklahoma it was then his purpose to permanently leave his home here, with the nursing and kind ministrations of his mother and sister, to undertake to live in his cabin on the homestead in the territory of Oklahoma. There is wanting in this case a concurrence of the facto et animo.

Notwithstanding the fact that the defendant railway company was operating its road through Oklahoma territory, with its agents amenable to legal process, where the plaintiff could have instituted his suit where he now calls his home, he brought his action at Kansas City, Mo., through local attorneys, where his home had been so long established, and where his local influence existed as theretofore. I take it that if, under such state of the proofs, the defendant company were assuming the burden of proof to show that the plaintiff had prior to the 29th day of November, 1902, or the 12th day of January, 1903, changed his citizenship from Missouri to Oklahoma, it would be wholly unsatisfactory to any impartial mind.

The plea to the jurisdiction is overruled.