### TITLE GUARANTY & SURETY CO. v. HANNON et al.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1920. Rehearing Denied May 27, 1920.)

No. 5006.

1. **Principal and surety** &#9758;175—**Contract of indemnity tendered in application for surety bond put in force by acceptance of bond for smaller amount.**

Where defendant made application to plaintiff, a surety company, on a form prescribed by it, to furnish his bond for $1,000,000 as state treasurer, by which application he agreed to pay a stated premium and to indemnify plaintiff against loss by reason of its suretyship, and without further application plaintiff furnished a bond for $500,000, which defendant accepted, and on which he paid the stipulated premium, a jury was authorized to find that plaintiff's action was a counter proposal, based on the original application, and that on its acceptance such application and its conditions and obligations came into force.

**2. Principal and surety ☞175—Surrender of indemnity bond consideration for substituted bond.**

> The surrender by a surety company of an indemnity bond executed to it by third persons on its becoming surety for a state officer is a valid and sufficient consideration for a new bond given in its place, although not all the makers were signers of the one surrendered.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Title Guaranty & Surety Company against Mary G. Hannon, now Mary G. Whitaker, executrix of the will of John Hannon, deceased, Frank J. Thomas, administrator of the estate of William E. Thomas, deceased, substituted for said William E. Thomas, and Thomas T. Kelly. Judgment for defendants, and plaintiff brings error. Reversed.

Charles Blood Smith, of Topeka, Kan. (Samuel Barnum, of Topeka, Kan., on the brief), for plaintiff in error.

R. F. Hayden, of Topeka, Kan. (George P. Hayden and D. R. Hite, both of Topeka, Kan., on the brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. Two separate actions were brought by The Title Guaranty & Surety Company, one against John Hannon and W. E. Thomas, and the other against Thomas T. Kelly. They were consolidated for trial and we have one record. In both verdicts and judgments were in favor of defendants. Each, as pleaded, was for the recovery of damages for breach of an indemnity contract. The one on which Kelly was sued was contained in his written application to the Surety Company to become a surety on his official bond, as State Treasurer of Kansas, for one million dollars. In it he promised to indemnify the Surety Company against loss, damages, counsel fees and expenses which the Surety Company might be put to in consequence of its executing the bond. The application was a printed form containing many questions of a personal nature and of the duties and responsibilities of his office, and blank spaces for answers and his signature. After he inserted the answers and signed it, he delivered it to the plaintiff's local agent, who sent it to the plaintiff at Scranton, Pa., its home office. In response it signed the bond as surety for Kelly for half a million dollars, and sent it to its local agent, who in turn delivered it to Kelly on January 6th or 7th. Kelly accepted it, induced local friends to become his sureties on another like bond for the same amount, and on January 10th delivered the two bonds to the proper State official, who approved them. The plaintiff retained Kelly's application. Nothing was said between Kelly and the local agent, when the latter delivered the bond to Kelly, about the application and the indemnity contract in it. A bank in which Kelly afterward deposited State funds failed, and by reason thereof Kelly, and the plaintiff as his surety, were sued on his official bond. This

action was brought to recover the expenditures made by plaintiff in defending that action.

[1] Kelly's defense,—the only one with a semblance of merit,—was that the refusal of the plaintiff to become his surety for one million dollars was a rejection of his written application, that his acceptance of the half-million dollar bond was an entirely new transaction wholly independent of his written application, and that he was not bound on the indemnity clause in it. If the half-million dollar bond tendered to Kelly was a counter offer on his application, and he accepted it as such in place of the million dollar bond, his application would stand modified only to that extent. Kelly knew that his written application had been demanded of and given by him as the basis on which plaintiff would decide whether it would become his surety. He also knew that his application bound him to pay the plaintiff a money premium if it took the risk. The promise of indemnity, and the premium which Kelly paid some time after he accepted the bond, was the consideration to the plaintiff. If his silent acceptance of the half-million dollar bond would support a reasonable inference of his release from the indemnity clause, why not a waiver of the premium also? If that was a new and independent transaction there was nothing in the application that would bind Kelly, but he subsequently paid the money premium. The circumstances under which the bond was delivered to and accepted by Kelly cause us to believe that the only rational estimate to be taken of that transaction is that the tender of that bond to Kelly was a proposed modification by the plaintiff of the application in that respect, and that Kelly's silent acceptance of it was an assent on his part to the modification; and in that view the jury could have been appropriately directed to find for plaintiff. But assuming, as the trial court did, that it presented an issue of fact for the jury, we are of the opinion that there was prejudicial and reversible error, both in the instruction given and in the refusal of the one asked by the plaintiff. The court told the jury:

"The fact is undisputed he (Kelly) made an application for a million dollar bond, but they declined to accept that application, did not write a million dollar bond. So that ended it, that application, unless it was subsequently taken up between them and was agreed subsequently by both the plaintiff and defendant Kelly that he would accept a bond that the plaintiff did write for him under that application."

And again:

"That written application was in evidence, and had the bond applied for,— or, put it in other words—had the proposition the defendant Kelly made to the plaintiff been accepted as made, and the bond applied for had been written, there would be no question. But, under the facts in this case, that proposition was not accepted, and it fell of its own weight. Had no more life until renewed by a subsequent agreement. There was a bond furnished by the plaintiff in the case in one half the amount applied for. How was that bond furnished. Did the plaintiff and the defendant agree when the bond in this case was furnished that it should be furnished by the plaintiff and accepted by the defendant in satisfaction of that proposition made, because if they did not make a second agreement in regard to that you have no evidence in this case at all that it was furnished under the application, and the burden is upon the plaintiff to establish that fact."

That, in effect, was a direction to find in favor of the defendant. The request of the plaintiff was to give the following instruction, which we think should have been given instead of the one given by the court of its own motion, if the issue were open:

"If the evidence in this case shows that the defendant Kelly originally requested the plaintiff to become surety upon his bond as State Treasurer, in the sum of $1,000,000, making said request in writing upon the printed form of application used by the plaintiff, and that the plaintiff refused to go upon his bond in said amount, and it further appears that the plaintiff did subsequently go upon his said bond as State Treasurer in the sum of $500,000, without the said Kelly signing a new application therefor, and that the original application for a million dollar bond was treated by the parties as if it had been modified so as to read for a half million dollar bond, no new application being asked of and no other application being signed by the defendant Kelly, then and in that event the said Kelly would be bound in this action by the provisions of the original application signed by him."

The other action was against William E. Thomas and John Hannon. They, with Chas. J. Devlin and Chas. J. Lantry, signed, sealed and delivered a bond to plaintiff in which they agreed to indemnify plaintiff against the same expenditures noted in the Kelly Case, and to assure the payment by Kelly to plaintiff of the money premium on his official bond. It recited that it was given on request of the makers to the Surety Company that it execute Kelly's bond as State Treasurer of Kansas. However, it bears date January 23rd, some sixteen or seventeen days after Kelly's bond had been signed and delivered by plaintiff. The recovery asked in this case was the same as in the other. These facts cannot be controverted: Prior to and at the time plaintiff's local agent delivered the bond to Kelly, on January 6th or 7th, he had in his possession, as agent, an indemnity bond drawn in the same terms as the one in suit, which had theretofore been signed by Lantry, Devlin and Hannon. On January 9th he sent that bond by mail to the plaintiff at Scranton. The word "December," as originally written in the bond, had been erased, and "January" substituted. On that account, and for the reason that there was no endorsement on the bond covering the correction, the plaintiff was not satisfied with it, and on January 12th returned it to the local agent with the request that he have a new bond signed to take its place. That bond, written in the terms of the one sued on, was a valid and binding obligation on the makers. U. S. Fidelity & Guaranty Co. v. Riefler, 239 U. S. 17, 36 Sup. Ct. 12, 60 L. Ed. 121; 1 Chitty on Contracts (11th Am. Ed.) p. 28. The agent thereupon procured the execution of the bond sued on and delivered the one that had been returned to him to Chas. J. Devlin. Hannon was physically unable to attend the trial. Thomas testified that he did not sign the first bond, though his cross-examination left that fact in some doubt. He also testified that he received nothing for signing the bond sued on.

[2] Inasmuch as the defendants were accommodation makers the court instructed the jury that there must have been a consideration to them for the execution of the bond sued on, which was after the day that Kelly's bond was delivered to him, and that the consideration

claimed was the surrender of the old bond for the new. But the court did not tell the jury that the surrender of the old bond was a fact established by the evidence beyond dispute. The charge also left the impression that even if that were found as a fact, still Thomas would not be liable unless he had also signed the first bond. This was error. If Devlin alone, who received the first bond back, had been the maker it would have bound him, or if Devlin and Lantry only had signed it it would have bound them, or if the two with Hannon had signed it it would have bound the three; and we think the testimony on that point is all one way and establishes beyond question that the three did sign it. The claim of Thomas that he did not sign it may be conceded, and is immaterial. His liability is not contingent on whether he received anything for executing the bond sued on. When the plaintiff surrendered the first bond it parted with a valuable right, a right to hold the makers for any damage it might suffer, covered by the terms of their obligation to it, and this was a valuable consideration sufficient to sustain the liability of the makers of the last bond. Violett v. Patton, 5 Cranch, 142, 3 L. Ed. 61; Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Rucker v. Bolles, 80 Fed. 504, 25 C. C. A. 600; Wald's Pollock on Contracts (3d Ed. by Williston) 185; 1 Addison on Contracts (Morgan's Ed.) § 9; 2 Kent's Com. 465. Plaintiff's request for a verdict in its favor should have been granted.

The record establishes that as between Kelly and the obligors on the bond, the latter were his sureties, and any judgment entered against the sureties should recite that Kelly is the principal debtor as between him and them.

Reversed.